Parker, C. J.
The demand made upon the promissor, on the day when the note was supposed to be due, without reckoning the days of grace, and the notice to the indorser predicated upon that demand, were wholly nugatory ; it having been settled in the case of Jones vs. Fales,(1) that the days of grace must be computed, to ascertain when a note so payable becomes due.
*It is also settled, as part of the law-merchant, that, [*91] when a note or bill is payable with grace, and the third day of grace falls on Sunday, or any other great holyday, when money is not usually paid, it becomes due on the second day of grace, namely, on Saturday.(2) This principle is adopted and practised upon in this Commonwealth, as part of the law-merchant, so far as respects Sunday. As there are here no fixed and established holydays, on which all business is suspended, perhaps no day but Sunday can be considered as legally reducing the time of payment, as expressed in a bill or note.† The note sued in this action was, therefore, payable on the 22d, and not on the 20th or 24th of May.
Parties are always supposed to make their contracts with reference to their legal effects, and are not excused from any duty imposed by law, merely because they may be ignorant of the law. The plaintiff, in this case, holding a negotiable note, was bound, if he would charge the indorser, to demand payment of the maker on the day it became due,(3) there being no circumstances to justify a delay, which sometimes is unavoidable, and, therefore, excusable, as in the case of Freeman vs. Boynton.(4) He made no demand until the 24th, although, by the terms of his note, it was due on 22d. By this negligence, he has lost his remedy against the indorser, whose contract was, to pay only in case payment should be refused by the maker, if demanded of him when the note became due.
In consequence of the delay in making the demand, there was also *86 a delay in giving the notice ; for, by the course of the mail, the letter to the indorser could not leave Boston until Wednesday morning ; whereas, had the demand been made on Saturday, notice might and ought to have been forwarded by the mail which left Boston on Monday morning.
It was urged, in the argument for the plaintiff, that, when the note was made and indorsed, the promissor was notoriously in-[ * 92] solvent ; so that the indorser ought to be considered *as engaging, at all events, to pay, and that notice to him of yon-payment would have answered no valuable purpose.
But we are to decide upon the contract as the parties made it, and n.ot to suppose it to be a different thing from what its terms import. Had they intended an absolute and unconditional engagement on the part of the indorser, a joint and several note, or a guaranty, would have been adopted, instead of a security by indorsement.
Whatever doubts may have existed heretofore of the liability of an indorser upon the note of a person notoriously insolvent, it is now settled by the case of Sandford vs. Dillaway,(5) that such a fact has no effect upon the contract. And it is rightly settled ; for notice, in such case may be as important as if the maker was solvent at the time of making the note, and afterwards became insolvent.† Indeed, to admit a construction of a written contract, totally different from the natural force and effect of the terms made use of, or from their known legal operation, supposed to be contemplated when it is made, would be to violate one of the most wholesome principles of the law, that written contracts shall not be contradicted or essentially varied by paroi testimony.‡
It was suggested, in this case, as in 'many others, that it is hard to confine parties to a day, in transactions of this nature ; especially when no change of circumstances appears to have resulted from the delay. But the hardship, if any, arises from a fluctuation of opinions, and an uncertainty as to rules ; and seldom from an inflexible adherence to them ; because, when it is once known that exactness in the performance of duty is to be required, parties will adapt themselves to such a state of things, and be always diligent and punctual to avail themselves of their contracts. To relax one day is, in point of principle, as much a departure from law as if a month or a year were suffered to elapse. The law itself provides for casualties, *nd the distance of parties to be affected with notice ; and any other indulgence would introduce a state of confusion with respec* [*93] to mercantile * contracts, productive of much greater hard *87 ships and inconvenience, than the most strict application of known rules.
The motion to set aside the nonsuit is overruled.†

 4 Mass. Rep. 245.

 Chitty, 141. — L. Raym. 743. — Bayley, 34

 Vide City Bank vs. Cutter, 3 Pick. 414. — Barker vs. Parker, 6 Pick. 80.

 Henry vs. Jones, 8 Mass. Rep. 453.

 7 Mass. Rep. 483.

 10 Mass. Rep. 52.

 [Bayley on Bills, 196, 200, note a.— Ed.]

 Vide note to Sanford vs. Dillaway, above cited, 10 Mass. Rep. 52, 3d ed.

 Bayley on Bills, 5th ed. 251, 252, 302 - 304, 306, 308 - 310.— Thompson on Bills, 470 - 472.