JAMES N. STAPLES & another *vs.* PRESIDENT, DIRECTORS, &c. of the FRANKLIN BANK.

The maker of a promissory note is bound to pay it, upon demand made at any seasona-
ble hour of the last day of grace, and may be sued on that day, if he fail to pay on
such demand.

Post notes, issued by a bank, are payable on demand made at any time, on the last day
of grace, after the known and usual hour of opening the bank for business, and may
be put in suit on that day, if payment is refused.

THIS was an action on a post note for $ 2500, dated Novem-
ber 8th, 1836, issued by the defendants, payable in eight months,

with interest, &c. The writ was sued out on the 11th of July, 1837, and the defendants' real estate was attached 7 minutes before 11 o'clock A. M. on that day. The defendants were defaulted. James Barker, a subsequent attaching creditor, after·wards filed his petition that the plaintiffs' attachment might be dissolved, pursuant to the provisions of the Revised Statutes, *c.* 90, §§ 83 – 91, on the ground that the sum demanded in the plaintiffs' suit was not payable when the action was commenced.

On the trial, before *Morton*, J. it was proved by a notary public, that on the 11th of July, 1837, he went, at the request of the plaintiffs, to the defendants' banking house in South Boston, and then and there, during the regular banking hours, presented the said post note to the cashier of the bank and demanded payment thereof, to which the said cashier replied that "the same will not be paid at present." It was proved that this demand was made before the commencement of this action, and that the defendants stopped payment before said 11th of July, and did not pay their bills, except a few small ones, after the 8th of July; that between the 5th and the 8th of July, the Tremont Bank refused to redeem the bills of the defendants, as it had before done; and that, from that time, those bills ceased to pass as money, or like the bills of the other banks in Boston.

The question whether the sum of money, demanded by the petitioner, J. Barker, in his action against the defendants, was payable to him at the time his action was commenced, was submitted to the jury, and they found a verdict in his favor.

If, in the opinion of the court, the plaintiffs' action was prematurely brought, then their attachment, so far as affected by the petition of Barker, is to be dissolved; otherwise said petition is to be dismissed.

*Fletcher* and *English*, for the petitioner. Post notes are entitled to grace; *Perkins* v. *Franklin Bank*, 21 Pick. 483; and the maker of a note, or the acceptor of a bill, has the whole of the last day of grace in which to make payment. *Jones* v. *Fales*, 4 Mass. 251. *Church* v. *Clark*, 21 Pick. 311. *Haynes* v. *Birks*, 3 Bos. & Pul. 602. *Hartley* v. *Case*, 4 Barn. & Cres. 339. *Bank of Utica* v. *Wager*, 2 Cow. 766. An ac

tion cannot be brought on the last day of grace. *Leftley* v. *Mills*, 4 T. R. 173, per Lord *Kenyon*. *Osborn* v. *Moncure*, 3 Wend. 170. *Randolph* v. *Cook*, 2 Porter, 286. *Webb* v. *Fairmaner*, 3 Mees. & Welsb. 474.

In Byles on Bills, 131, the rule is thus laid down, viz. if payment be refused, during the last day, the holder of a bill or note may give notice of its dishonor ; yet if payment be subsequently made, on that day, such notice becomes of no avail. And this is the extent of the rule, as expressed in *Farmers' Bank* v. *Du vall*, 7 Gill & Johns. 89. *Crenshaw* v. *M'Kiernan*, Minor, 295. *Bussard* v. *Levering*, 6 Wheat. 102. *Lindenberger* v. *Beall*, 6 Wheat. 104. 1 Leigh's Nisi Prius, 447.

This action was commenced before the reasonable hour. The note was by law payable only at the bank, and a demand there was necessary ; but the defendants were in no fault until the close of banking hours. *Church* v. *Clark*, 21 Pick. 310.

*Washburn*, for the plaintiffs. A default of the maker which will charge the indorser, upon notice, gives a right of action against the maker. As notice may be given, on the maker's failing to pay, on demand, during the business hours of the third day of grace, an action may then be commenced against him. *Leftley* v. *Mills*, 4 T. R. 174, per *Buller*, J. Bayley on Bills, (2d Amer. ed.) 345. *Greeley* v. *Thurston*, 4 Greenl. 479. *Shed* v. *Brett*, 1 Pick. 401. *New England Bank* v. *Lewis*, 2 Pick. 125. *City Bank* v. *Cutter*, 3 Pick. 418. *Boston Bank* v. *Hodges*, 9 Pick. 421. *Dennie* v. *Walker*, 7 N. Hamp. 201. *Henry* v. *Jones*, 8 Mass. 453.

The demand was seasonably made and payment was refused sufficiently to render a second demand, at a later hour, unnecessary. Bayley on Bills, 261. *Ex parte Moline*, 19 Ves. 216. *Burbridge* v. *Manners*, 3 Campb. 193.

*Fletcher*, in reply. The weight of authority, in England, is with the petitioner. There is no adjudication there against him. *Buller*, J. founded his opinion (4 T. R. 174,) solely upon the custom to protest bills on the last day of grace. *Shed* v. *Brett* was decided on the question of notice alone. Though the writ was made on the last day of grace, yet it was not served until

the next day, and might therefore be considered as merely pro visional, so that the action was not commenced before service of the writ. *Seaver* v. *Lincoln*, 21 Pick. 267. The opinion in 4 Greenl. 479, was extrajudicial, resting on that of *Buller*, J. and on *Shed* v. *Brett*. In all other cases, a debtor has the whole day ; and there is no good reason for making an exception in the case of notes and bills.

SHAW, C. J. The present question comes before the court upon the petition of a subsequent attaching creditor, to set aside and dissolve the attachment in the present suit. The Rev. Sts. *c.* 90, §§ 83 – 94, authorize an after attaching creditor to come in and obtain a dissolution of the prior attachment, by showing, if he can, either that the sum demanded in the first suit was not justly due, or that it was not payable when the action was commenced. The petitioner insists that his case is within the last provision of the statute ; that the sum demanded in this writ was not payable when the action was commenced ; and this is the question for our consideration.

. The action is brought upon a bank post note issued by the defendants, dated November 8, 1836, demanded at the bank July 11, 1837, in the forenoon, after the commencement of banking hours. Payment was then refused, and an action was commenced, after the demand, the same forenoon. No tender, or offer of the amount, was made to the plaintiffs, either on the same day, or at any time afterwards.

In a recent case, it was held that the statute, giving days of grace on all promissory notes payable at a future day certain, in which there is not an express stipulation to the contrary, (Rev. Sts. *c.* 33, § 5,) applies to bank post notes, and is not controlled or affected by the usages of banks. *Perkins* v. *Franklin Bank*, 21 Pick. 483. This note being entitled to grace by the statute, the 11th of July was the last day of grace ; and then the question is, whether upon a demand and refusal of payment, within banking hours on the last day of grace, a right of action immediately accrues to the holder, so that he may then commence his action ; or whether he is bound to wait till the next succeeding day. It certainly struck me with some surprise,

that such a question should now be made, thinking, as I did, that it was well settled, by the law and practice of this Commonwealth, that a promissory note was due at any time within reasonable hours, on the last day of grace, and that upon presentment to the promisor, and a demand of payment, and on a neglect or refusal to pay, the note was dishonored, and a right of action immediately accrued to the holder against the maker ; and after due notice, actual or constructive, to the indorser, a like right of action, on the same day, accrued to the holder against the indorser. But as it appeared upon the argument that there is respectable authority for the contrary opinion, it becomes necessary to examine the subject with attention. Nothing is more important to a commercial community, than to have all questions relative to the rights and duties of holders, and all other parties to negotiable bills and notes, definitely settled. And it is greatly desirable, that throughout all the States of the Union, which, to many purposes, constitute one extended commercial community, the rules upon this subject should be uniform.

We will first consider the Massachusetts authorities on this subject, and then see how far they are supported or opposed by those of England or the other States.

The only question now is, whether a note is payable on demand on the last day of grace, when a note is entitled to grace. A different construction may perhaps apply, when a note is payable without grace. As grace was originally matter of indulgence and courtesy, and not of contract, it perhaps may be contended, that although a debtor has the whole of the last day of the credit stipulated for by contract to make payment, yet a different rule may apply to grace, which is not part of the contract. So when the third day of grace falls on Sunday, as the right of one or the other of the parties must yield, it shall be that of the one who claims indulgence, and not of him who claims of right ; whereas if a bond were to be payable on Sunday, the debtor would have till the close of Monday, to pay it. Some of the cases appear to turn on this distinction.

Formerly it was held, in Massachusetts, that unless a promissory note expressed grace, it was payable without grace ; now it

is otherwise by statute. Whether a note, expressed to be payable in thirty days, without grace, is considered due on demand on the thirtieth day after the day of the date, it is not now necessary to decide ; though we are inclined to think that such was the rule formerly, when notes were not entitled to grace.

The first case of which a report is published, and which is directly in point, is a *nisi prius* decision of Chief Justice *Parsons*, and is reported in an American edition of Chitty on Bills, (p 225, note *y*,) published in 1809, and edited by Mr. Story, now Mr. Justice Story, of the supreme court of the United States, that of *Park v. Page*, Suffolk, November term, 1808. He says, " the note is due on the last day of grace, and if payment is refused, the maker may be sued on that day." I have examined the record of that case, and find that it was a suit by the indorsee against the indorser of a promissory note, dated 7 July, 1807, payable at sixty days with customary grace. The last day of grace was therefore the 8th of September. The writ is dated on the 8th of September, and was served by an attachment of real estate, at 11 o'clock on that day. To this opinion at *nisi prius*, no exception appears to have been taken, and parties and counsel acquiesced. The only difference between the case thus appearing, and the note cited, is, that the action was against the indorser and not against the maker. But if an action would lie against the indorser, who is only provisionally liable on the default of the maker, *à fortiori*, as it seems, would it lie against the maker, who is the principal debtor. This edition of Chitty, by Mr. Justice Story, was extensively in use in this Commonwealth, for many years, amongst lawyers and merchants, and was regarded as high authority on the law of negotiable bills and notes.

The case of *Henry v. Jones*, 8 Mass. 453, decided in 1812, appears to me to have a strong application to the point in question. It was a suit against an indorser, on a note dated March 4th, 1809, payable in sixty days ; and as the law then stood, was not entitled to grace. The question was, whether the day of the date should be excluded from the computation of the sixty days ; if it should be, the note was at maturity on the 3d of May ; if included, it was on the 2d. The note was presented to the

maker on the 2d, and payment refused, and notice was given to the indorser at a very early hour on the morning of the 3d, and payment not being made, a suit was then commenced. The court held that the day of the date should be excluded, and from there being no grace, the 3d of May was the last day of the sixty days' credit stipulated for, by the contract. The court, in concluding their judgment say ; " No action lies against the indorser, until after demand made *on* the day of the maturity of the note. In this case the demand was made on the day preceding, and not on the day fixed by the parties for the payment." Here, it will be perceived, the rule was prescribed, as well when the note was payable without grace, as when it is with grace ; and it is payable on demand, on the last of the days specified in the note. Otherwise, the note in question would not have been demandable till the 4th.

This case is recognized and confirmed, as to a demand on the day of maturity, in *Farnum* v. *Fowle*, 12 Mass. 89.

But the case in which the point was directly decided, and a case which received great consideration, is that of *Shed* v. *Brett*, 1 Pick. 401. Several other questions were considered, and the case underwent great discussion. The action was commenced against the indorser, on the last day of grace, after a demand on the promisor, and notice put in the post-office for the indorser, who lived in another town, and held well to lie. The point, that all parties are in default, and liable to an action on the last day of grace, after demand and refusal to pay, seems rather to have been taken as a well settled rule, than an open question. The court, in giving judgment, say that the right of action accrues against the indorser of a note, when the maker refuses to pay.

The case of *N. E. Bank* v. *Lewis*, 2 Pick. 125, goes on the same ground. The action was against the indorser, and commenced on the last day of grace, and it was conceded that if the notice had been given to the indorser before the service of the writ, which might have been done in a few minutes, the action might have been sustained. The case was decided on a distinction between the case where the parties live in the same

and in different towns. In the latter case, putting a letter in the post-office is held sufficient constructive notice, although it cannot by possibility have reached the indorser by the course of the mail. And the point in this case was, that if the notice precedes the suit ever so short a time, as if the officer go with the notice in one hand, and the writ in the other, it will be sufficient. This is an express declaration, that an action will lie after a default on the last day of grace.

The case of *City Bank* v. *Cutter*, 3 Pick. 414, is quite decisive of the same point. In that case, which was against an indorser, the defendants pleaded a tender on the day after the last day of grace. If the promisor and indorser had to the last hour of the last day of grace to make payment, there was no default till the day after ; and as there can be no fraction of a day in such case, a tender on that day would be a complete performance of the contract, and a good bar to the action. The court in overruling the plea, say, " Our doctrine, as established in the case of *Shed* v. *Brett*, and indeed always practically recognized, is, that the suit may be brought on the very day the note becomes due, after demand and notice, for there is then a breach of the promise. If the note is not paid during the business hours of the day, if the money is to be paid into a bank, a right of action has accrued."

The same doctine is recognized and declared in *Boston Bank* v. *Hodges*, 9 Pick. 420. The court, on dealing with an argument of the plaintiff, that the note being due on the 9th of May, the last day of grace, a demand and refusal to pay on any part of that day, with immediate notice to the indorser, will give a right of action against the latter, say ; " This is true, when there is an actual demand upon the maker according to the general rule of law." But the case was decided against the plaintiffs, on the ground that they had neither conformed to the general rule of law, nor to the substituted course established by their own usage.

The principle I am stating was again recognized in *Church* v. *Clark*, 21 Pick. 310. The note was made payable at a bank, and the suit was commenced against the maker at one minute after 12 o'clock at night, being the morning of the last

day of grace. Held that it would not lie. The court again repeat the general rule, that a note is payable at any time on demand on the 'ast day of grace, or day it becomes due. But such a rule may be modified by the terms of the note ; and making a note payable at a bank, is making it payable within usual banking hours.

From this view of the cases decided in Massachusetts, it seems to have been uniformly held, that on demand and refusal of payment, by the maker, at any reasonable time on the last day of grace, the note is due and payable ; that if not then paid an action may be immediately commenced against the maker, and after actual or constructive notice to the indorser, against him. And as stated by Chief Justice *Parker*, in 3 Pick. 418 this rule seems to have been always practically recognized.

This point has been decided in the same way in Maine. It is there held, that bills and notes are payable on demand, at any reasonable hour, on the day they fall due, and if not then paid the acceptor or maker may be sued, and also the drawer and indorser, after notice. *Greeley* v. *Thurston*, 4 Greenl. 479. *Flint* v. *Rogers*, 3 Shepley, 67. It is a little remarkable, as mentioned by Mr. Justice *Weston*, that there is no direct English authority upon this point. There appears to be no case in which it has been decided, either that an action may or cannot be commenced on the last day of grace, or day the note becomes due. The general rule in regard to payment of debts, for rent, on bond, for goods sold on credit or otherwise, is, that the debtor has till the last hour of the day, in which to make payment ; *Webb* v. *Fairmaner*, 3 Mees. & Welsb. 474 ; but the case of negotiable bills and notes is uniformly treated as an exception. All the authorities hold, that a foreign bill must be demanded on the last day of grace, and, if not paid, must be noted for protest ; and the authorities are equally uniform, that if not thus paid on demand, on the last day, by the acceptor or maker, they may be treated as dishonored, and notice may be immediately given to the drawer and indorsers, and they will be held liable. *Leftley* v. *Mills*, 4 T. R. 170. In this case, Mr. Justice *Buller* lays down the rule very explicitly, and it seems to have been subsequently followed

He states the rule to be, that if not paid on demand, on the last day, the bill is dishonored, the parties are in default, and the bill may be, and, in case of a foreign bill, must be protested on that day, although notice will be seasonable if given the following day. *Burbridge* v. *Manners*, 3 Campb. 193. *Ex parte Moline*, 1 Rose Bankr. Cas. 303. *S. C.* 19 Ves. 216. It was there held, that demand on the acceptor at 11 o'clock, and notice of non-payment to the drawer the same morning, was good, and warranted the proof of a debt against the drawer, who had become bankrupt.

The rule is uniformly laid down by the text writers, that the bill must be presented for payment on the last day of grace. Bayley on Bills, 126. Chitty on Bills, 365. The latter writer seems to consider the rule established, that the contract of the maker of a note or acceptor of a bill, is to pay on demand, on the appointed day, and if payment be not made on such demand, the contract is broken, and the holder may treat the bill as dishonored.

In a late work, Byles on Bills, it is stated, *p.* 131, that the acceptor of a bill, whether inland or foreign, or the maker of a note, should pay it on a demand made, at any time within business hours, on the day it falls due, and if it be not paid on such demand, the holder may instantly treat it as dishonored. But the acceptor has the whole of that day within which to make payment ; and though he should, in the course of that day, refuse payment, which entitles the holder to give notice of dishonor, yet if he subsequently, on the same day, makes payment, the payment is good, and the notice of dishonor becomes of no avail.

This writer cites *Hartley* v. *Case*, 1 Car. & P. 556, 676. *S. C.* 4 Barn. & Cres 341. The point was made in that case, that notice could not be given on the day the note becomes due ; but the case went off on another ground, and no opinion was given on this question.

The passage cited appears contradictory to itself, inasmuch as it declares that the note is due and payable on demand on the last day of grace, and is dishonored if not then paid, and yet

that the maker and acceptor have the whole day to pay it in. It would seem that there could be no dishonor, unless the maker had failed to comply with his contract; and if he has failed to comply with his contract, then, by a general rule of law, the holder has his remedy by action.

Perhaps the state of the law upon this point may be accounted for, by a remark made in Chitty on Bills, 36, who, after saying that notice of dishonor may be given on the same day, adds, it is not usual or necessary to give notice of non-payment before the following morning, and therefore there can be no objection to the allowance of the whole day on which the bill becomes due, to pay it in. It is probable, therefore, that though the holder may have a strict right to proceed in all respects as upon a dishonored bill on the last day, after demand, refusal, and notice, yet it is so far the general practice to postpone notice and other proceedings till the day following, that it is regarded amongst merchants as a right. That it seems so to have been understood by men of business, appears by a remark of Mr. Justice *Buller*, in *Colkett* v. *Freeman*, 2 T. R. 61, and also by an *obiter dictum* of *Bolland*, B. in *Webb* v. *Fairmaner*, 3 Mees & Welsb. 474. But the case of negotiable bills and notes was not then under consideration.

No doubt there is a prevailing understanding in England, that the maker or acceptor has, by right or by courtesy, the whole of the last day to make payment in, and if it is so in fact paid or tendered, there would be little occasion for the holder to insist on his right of action, and decline receiving payment; and so no case has arisen, in which it has become necessary to decide that precise question. Possibly it may be considered, that the holder has a right to treat the bill as dishonored, after demand and refusal, and even to commence an action, subject to be defeated and barred in case the maker should pay the amount due, at any time on the last day of grace; though it is difficult to perceive how the holder can have a perfect right to treat the note as dishonored, by breach of the contract, and, at the same time, that the acceptor can have a perfect right, by payment of the bill,

5 *

to perform his contract, and save himself from the consequences of such breach.  In *Hartley* v. *Case*, 1 Car. & P. 556, already cited, *Abbott*, C. J., on a motion to show cause, says, " I think the notice of dishonor, given on the day on which the bill is payable, will be good or bad, as the acceptor may, or may not, afterwards pay the bill.  If he does not afterwards pay it, the notice is good ; and if he does, it of course comes to nothing."

This certainly implies, that after non-payment on demand, on any part of the last day, there is a breach of the contract of the maker, and no further demand is necessary to complete the holder's right against the maker, acceptor, and indorsers.  But whether, after such breach and before the close of the day, an action might be commenced against either, does not appear by this case, nor, as we believe, by any case decided in England.

The only decided case opposed to the opinion which we have adopted, and one entitled to great respect, is that of *Osborn* v. *Moncure*, 3 Wend. 170.  In this case, which was an action by the payee against the maker of a note, demand was made on the last day of grace, and, payment being refused, a suit was commenced at three o'clock on the same day.  The court were of opinion, that a demand on the maker should be made on the third day of grace, and, on refusal, the holder might treat the b1 l as dishonored, so far as immediately to give notice to the indorser ; yet that the maker has the whole day to pay it in, if he thinks proper to seek the holder.  They rely upon the general rule applicable to the case of other debts, that the debtor has to the last instant of the day to make payment, and they consider that in this respect there is no distinction in case of negotiable bills and notes.

It had been frequently held in the courts of New York, that demand must be made on the last day of grace, as well on inland bills and promissory notes as on foreign bills, and if not then paid, the holder might treat them as dishonored and notify the drawer and indorsers.  *Jackson* v. *Richards*, 2 Caines, 344.  *Corp* v. *M'Comb*, 1 Johns. Cas. 328.

Indeed the rule seems to be settled by all the authorities, Eng

lish and American, that a demand must be made on the maker or acceptor, within reasonable hours, on the day of maturity, and when the bill or note is in a bank, which has certain fixed and known hours for being open for business, those will be construed to be reasonable hours ; that if the bill or note is not paid on demand, it is dishonored, and notice may be immediately given to the drawer and indorsers, and, without further demand or notice, they will be legally bound to make payment. *Tindal* v. *Brown,* 1 T. R. 167, affirmed in Ex. Ch. 2 T. R. 186, *note. Bussard* v. *Levering,* 6 Wheat. 102. But what shall be the legal consequence of such dishonor, does not appear to have been decided in England. In the case cited, 1 Car. & P. 676, it was argued by counsel, Scarlett, Holt, and Chitty, and not controverted by the court, because the decision of the case did not require it, that a payment of a bill on the day of maturity, but after actual dishonor, is no better than paying at any time before action brought. And it had long before been decided in *Hume* v. *Peploe,* 8 East, 168, that a plea of tender after the day of payment, though of all the money due on the bill, was not a good plea in bar, because it did not show a performance of the contract. If then there is a breach of contract, by a non-payment on demand, and the tender after a breach is no bar, it would seem to follow, as a necessary legal consequence, that an action would then lie.

But upon this point, the courts of different states have come to different conclusions. In New York it has been decided, as in the case cited, that an action will not lie till after the day. In Maine, as we have already seen, it has been decided that an action will lie, against all the parties, on the day of maturity, after an actual dishonor.

In New Hampshire, *Dennie* v. *Walker,* 7 N. Hamp. 201, the court say, it may now be considered as settled, that notice may be given and suit brought against the indorser on the last day of grace, after demand and notice.

In Maryland, in the case of *Farmers' Bank* v. *Duvall,* 7 Gill & Johns. 89, the court say, it is now settled, that demand may be made on the last day of grace, and if payment be not made,

the holder may at once treat the note as dishonored, and give notice accordingly. It is not however stated, in terms, that an action may be at once brought.

In South Carolina, in *Wilson* v. *Williman*, 1 Nott & M'Cord, 440, it was decided on great consideration, by a majority of the court, that the maker may be sued on the third day of grace, after demand.

On the whole, we think the weight of authority is in favor of the conclusion to which we have come ; and if it were a new question, it seems to follow, on legal principles, as a fair and legitimate conclusion from the established fact that the contract of the acceptor or maker is broken by a neglect or refusal to pay on demand, within reasonable time, on the last day of grace, that the holder may then have his remedy by action. But in this Commonwealth, it is not a new question ; it has been settled, we believe, by a uniform series of decisions, and by a long and unbroken course of practice.

It may be proper to make a remark on the point, that some of the cases in Massachusetts manifestly go upon the ground, that when a third person has accepted a bill or made a note payable at a bank, or when, from circumstances, it may be inferred, that the parties intended that the note should be paid at a bank, the maker has the whole of the usual time of banking hours to pay it. This proceeds upon the ground that the parties have entered into an express or implied agreement, that the note shall be so paid and treated. But when the bank itself has undertaken to pay a sum on any given day, they are bound, like any other promisor, to pay on demand, on that day ; and the only difference, in this respect, between a bank and an individual, is this, that what would be reasonable time for a demand, in case of individuals, is fixed, in case of a bank, by their known usual hours of being open for business. This is the case in regard to common bank notes, and it would be most pernicious, in regard to them, to establish a different rule, or raise a doubt respecting it. And a post note, when, by the lapse of time and the force of the contract, it has become payable on demand, stands in this

respect on the same footing with a bank note, which is payable on demand in its terms.

The court are therefore of opinion, that the post note in question was due and payable when the action was commenced ; that the attachment of the plaintiffs was well made, and that the petition must be dismissed.