WILLIAM R. BUSENBARK

*v.*

GEORGE W. SAUL.

*Opinion filed February 21, 1900.*

APPEALS AND ERRORS—*practice where Appellate Court reverses without remanding or reciting facts.*  Where the Appellate Court has reversed a judgment at law in favor of plaintiff without remanding the cause or reciting the facts in its judgment the Supreme Court will examine the evidence in the record, and, if it fairly tends to establish the plaintiff's case, will reverse the judgment of the Appellate Court, with directions to that court to affirm if it finds the facts the same as the trial court and there are no errors of law, or, if it finds the facts differently from the trial court and holds there is no right of recovery, to recite such facts in its judgment and reverse the judgment below, remanding or not remanding the cause, as it deems proper.

*Saul* v. *Busenbark*, 83 Ill. App. 256, reversed.

| 184 | 343 |
|-----|-----|
| s83a | 256 |
| 184 | 343 |
| f191 | 445 |
| 184 | 343 |
| 200 | 424 |
| 184 | 343 |
| 204 | 336 |
| s106a | 107 |
| 184 | 343 |
| 110a | 424 |
| 184 | 343 |
| 112a | 149 |
| 184 | 343 |
| 214 | 595 |

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

WINSTON & MEAGHER, (JAMES F. MEAGHER, and RALPH M. SHAW, of counsel,) for appellant.

DARROW, THOMAS & THOMPSON, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

In an action of assumpsit in the circuit court of Cook county appellant recovered a judgment against appellee for $15,000 and costs of suit.  On writ of error to the Appellate Court (the case being there assigned to and heard by the branch court) the judgment of the circuit court was reversed without remandment, no finding of facts being recited in the final order.  To reverse that judgment this appeal is prosecuted.

On the record here presented three presumptions or inferences arise:  First, that the Appellate Court found the facts the same as did the circuit court, otherwise it

would have recited its findings in its judgment, as required by the statute; second, that the Appellate Court did not reverse the judgment of the circuit court for any erroneous rulings on questions of law arising on the trial, because, if it had, it would have remanded the case for another trial, upon which the errors could be avoided; third, that having found the facts the same as the circuit court found them, and not having reversed its judgment for any erroneous ruling on the trial, it must be inferred that it held the facts as found both by it and the circuit court insufficient to sustain the cause of action. (*Hogan* v. *City of Chicago*, 168 Ill. 551; *Siddall* v. *Jansen*, 143 id. 537; *Coalfield Co.* v. *Peck*, 98 id. 139; *Neer* v. *Illinois Central Railroad Co.* 138 id. 29; *Jones* v. *Fortune*, 128 id. 518; *Commercial Ins. Co.* v. *Scammon*, 123 id. 601; *Scovill* v. *Miller*, 140 id. 504; *Brant* v. *Lill*, 96 id. 608.) Hence all we can do upon this appeal is to look into the evidence and determine whether it fairly tends to establish the cause of action alleged. If we find it does, the judgment of the Appellate Court must be reversed; otherwise it will be affirmed.

The declaration was the common counts in assumpsit, to which was attached plaintiff's affidavit that the suit was for commissions for services rendered the defendant, and that there was due him the sum of $44,000. The plea was the general issue. A jury was waived and the case tried by the court.

The following facts stated by the Appellate Court appeared upon the trial, which are not controverted:

"The defendant in error, Busenbark, was seeking to do business as a broker in New York City. An arrangement was made between him and plaintiff in error by which the two came to Chicago, and here Busenbark introduced Saul to Mr. John R. Walsh and Mr. Andrew McNally, whom it was sought to interest in a matter Saul had in hand. As a result a contract was made between the three last mentioned. At that time Saul owned or controlled nine thousand shares of stock of the Cleveland,

Akron and Columbus Railway Company. This was not a majority of the shares, and other parties in New York were seeking to obtain the controlling interest. Saul believed that if they succeeded the value of his stock would be impaired, and was apparently seeking for money or co-operation to enable him to obtain stock enough to secure control for himself, or for a combination with which he should be connected. A contract and pooling arrangement with Walsh and McNally was made for this purpose. Aside from the stock held by his New York antagonists the balance of the power was with the stock then owned in Holland. By the terms of their contract with Saul, Walsh and McNally agreed to advance the money necessary to acquire a majority of the whole issue of stock, to be purchased, if possible, upon terms satis- . factory to them. It was provided that any expense incurred in attempting to purchase stock should be paid, two-fifths by Saul and the remaining three-fifths by Walsh and McNally. Busenbark was selected to go to Holland to buy stock, and Mr. Walsh furnished him a letter of credit in behalf of the three contracting parties, who were to defray his expenses. The instructions with reference to the purchase of stock were to come from Mr. Walsh, who represented the other parties. No arrangement was made as to whether Busenbark was to receive anything for his services. He says he 'was willing to leave that with those gentlemen.' His mission to Holland proved a failure. He could not buy the stock there and was also unable to pool the stock held there with that held by his principals here. By its terms the agreement between Walsh, McNally and Saul expired with the failure of the combination to purchase the additional stock within two months. A day or two before the expiration of that time Saul received an advantageous offer for his stock from the opposing or Brice interest in New York, and with the consent and upon the advice of Mr. Walsh sold out his nine thousand shares of stock at

a figure considerably above what he could have obtained two months earlier."

The theory of the plaintiff in bringing his suit manifestly was, that by an express agreement between himself and the defendant before leaving New York, and his subsequent performance of that contract, he was entitled to one-half of the advance which the defendant realized on his nine thousand shares of stock, which is claimed to be $88,000, hence he claimed that there was due him $44,000. That theory is not open to discussion here. The trial court held, in propositions of law submitted by the defendant, that no such express agreement was proved, and, of course, the decision of the Appellate Court amounts to an affirmance of that ruling. Independently of all these findings, we regard it clear, beyond serious controversy, not only that the plaintiff failed to establish an express contract, but that there is no evidence in this regard fairly tending to prove it. The judgment of the circuit court, however, was upon the entirely different ground that the plaintiff was entitled to recover from the defendant for services rendered upon an implied contract, the measure of recovery being the reasonable value of the services rendered. That the declaration is broad enough to sustain such a judgment is not denied, but the difficult question, as we are compelled to treat the case, is, whether or not any evidence is shown by the record, which, with its reasonable inferences and intendments, fairly tends to establish a cause of action on that theory. If such evidence is to be found, it is in the testimony of plaintiff himself and his only witness, John R. Walsh, and correspondence between them and parties referred to by them, and offered in evidence. This evidence must, of course, be considered without reference to the contradictory testimony of defendant and his witnesses.

We shall not attempt to review the testimony of plaintiff and Walsh, or discuss its weight. We have endeavored to give it careful, impartial consideration, and have

reached the conclusion that, standing alone, it fairly tends to prove, first, that while the primary purpose in sending plaintiff abroad was to purchase shares of stock for the benefit of these parties,—Saul, Walsh and Mc-Nally,—it was understood before and after he left that if he failed to accomplish that purpose he should, if able to do so, prevent the New York party, who was Senator Brice, from obtaining enough of the shares held in that country to give him control of the company; second, that what the plaintiff did while in Amsterdam produced a beneficial influence upon the value of the stock of the company, and thereby the defendant was enabled to sell his shares for a much larger sum than he could otherwise have done; third, that after the plaintiff's return to this country the defendant recognized the foregoing facts and promised to settle with him for the same, the reasonable inference to be drawn from such promise to "settle" being that he would compensate him for the services rendered. That these facts tend to prove a liability, under the law, on the theory of an implied contract, we do not understand to be denied. Neither is it denied that the value of the services rendered under such state of facts may be proved under the common counts in assumpsit.

In their original arguments both parties concede that the foregoing conclusion would lead to a reversal of the judgment of the Appellate Court and a remandment to it, with directions. In the reply brief and arguments of counsel for appellant for the first time it is insisted that if we should find there was evidence tending to support the action we should affirm the judgment of the circuit court. The contention is not only made too late, but is contrary to practice. The inference that the Appellate Court based its decision upon the ground that plaintiff produced no evidence whatever upon the trial fairly tending to make out his case is but an inference, and arises from the fact that on the face of the judgment no other ground could be discovered for it. When, however, the

record is examined and it is seen there is such evidence we will no longer indulge the inference, but hold that the Appellate Court proceeded irregularly in failing to either remand the cause for another trial or recite its finding of facts in conformity with section 87 of the Practice act, (Hurd's Stat. 1899, chap. 110, p. 1296,) and for such irregularity reverse its judgment, with an order of remandment and directions. It was so ordered in *Brant* v. *Lill, supra.* Such an order is eminently proper in this case, the question being essentially one of fact, and the duty of settling the facts devolving upon the Appellate Court.

The judgment of the Appellate Court will be reversed and the cause will be remanded, with directions to that court to· affirm if it finds the facts the same way they were found in the circuit court. If, on the other hand, the Appellate Court finds the facts different from the finding in the circuit court and finds no recovery can be had on the evidence, the facts as found by the Appellate Court should be recited in the final judgment, as required by the statute, and the judgment of the circuit court reversed, or reversed and remanded, as in the opinion of that court may be proper.       *Reversed and remanded.*