FRANK SUPPLE

*v.*

JOHN P. AGNEW *et al.*

*Opinion filed October 24, 1901.*

1. APPEALS AND ERRORS—*effect where the Appellate Court reverses without remanding.* If the Appellate Court reverses a judgment for the plaintiff without reciting the facts or remanding the cause, it must be presumed that the Appellate Court agreed with the trial court as to the facts but held them insufficient to sustain the cause of action, and on further appeal the Supreme Court can only look into the evidence and determine whether it fairly tends to prove the cause of action alleged. If it does, the judgment of the Appellate Court must be reversed, otherwise affirmed.

2. PLEADING—*what need not be alleged in action for negligence in not furnishing sufficient help.* A declaration which charges negligence by the defendant in failing to furnish a sufficient number of men to do the work with safety to the plaintiff need not contain a distinct allegation of a failure to do some act which would have permitted the work to be done with a less number of men than was necessary without such performance.

3. MASTER AND SERVANT—*master should provide sufficient help to do work.* It is the duty of the master to his servant to exercise reasonable care in furnishing an adequate number of co-laborers to assist in the performance of work of a hazardous nature.

4. SAME—*servant does not assume risk of work outside the scope of his employment.* If a servant is ordered by the master to work temporarily in another department of the business outside the scope of his employment and with which the master knows he is not familiar, he does not, by obeying such order, necessarily assume the risks incident to the work.

5. LAW AND FACT—*what questions in an action for negligence are for the jury.* Whether the defendant was negligent in not providing a sufficient number of men to assist in the work which the plaintiff was attempting to do when injured, and whether the injury was the result of the negligence of a fellow-servant, are ordinarily questions for the jury under the evidence and the instructions.

*Agnew* v. *Supple,* 80 Ill. App. 437, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

This is an action on the case, brought by the plaintiff in error against defendants in error, John P. Agnew, and John McGillen, and one Francis Agnew, since deceased, who composed the firm of Agnew & Co., to recover for personal injuries, claimed by plaintiff in error to have been sustained by him by reason of their negligence while he was in their employ. Verdict and judgment were in favor of the plaintiff in error for $1500.00. This judgment has been reversed by the Appellate Court; and to reverse the judgment of the Appellate Court the present writ of error is sued out.

The judgment, rendered by the Appellate Court, was as follows: "On this day came again the said parties, and the court having diligently examined and inspected, as well the record and proceedings aforesaid, as the matters and things therein assigned for error, and being now sufficiently advised of and concerning the premises, are of the opinion that in the record and proceedings aforesaid, and in the rendition of the judgment aforesaid, there is manifest error. Therefore, it is considered by the court that, for that error and others in the record and proceedings aforesaid, the judgment of the superior court of Cook county, in this behalf rendered, be reversed, annulled, set aside, and wholly for nothing esteemed. And it is further considered by the court that the said appellants recover of and from the said appellee their costs, by them in this behalf expended, to be taxed, and that they have execution therefor."

The count of the declaration, upon which the case was tried, alleged that the defendants on, to-wit: January 6, 1893, were contractors, engaged in digging a certain trench or canal in said county, and, in said work, employed a large number of men as carpenters, laborers and otherwise, said carpenters being under the immediate direction and control of an agent or servant of defendants known as a boss-carpenter; and said laborers being divided into gangs, each gang being under the control and

direction of an agent or servant of defendants known as a gang-foreman; and said boss-carpenter, carpenters, gang-foreman and laborers being under the general control and management of an agent or servant of defendants known as a walking-boss, who was employed by defendants to manage, control and superintend the work of digging said canal, and to direct, manage and control all the servants of defendants engaged about said work; that plaintiff had theretofore been employed by defendants as one of said gang-foremen to oversee a gang of laborers in digging dirt from said canal, and to see that said gang performed its work in a proper manner, and for no other purpose whatever; and, on the day and in the county aforesaid, while plaintiff was so engaged as such gang-foreman, the said walking-boss, under whose control plaintiff had been placed by defendants, ordered plaintiff, contrary to the terms of his employment, as said walking-boss well knew, to temporarily assist said boss-carpenter about the construction of a certain bridge being then and there built by defendants across a certain stream, known as the DesPlaines river, said walking-boss well knowing that plaintiff was not a carpenter and was not versed or experienced in carpenter work or in construction of bridges, and said walking-boss ordered plaintiff to do whatever work said boss-carpenter should direct; and plaintiff, in obedience to said instructions, went to work with said boss-carpenter, and was by him directed to assist said carpenter in moving certain heavy timbers of great length along certain planks, which extended across certain abutments on either side of said river, upon which abutments said bridge was being built; and, for the purpose of more easily moving said timbers, defendants had provided a certain implement known as a "dolly," consisting of a small wooden platform, upon the lower side of which was a roller resting upon the ground; and plaintiff, in obedience to the order of said carpenter, helped to place said timber upon said dolly,

and was assisting said carpenter in moving said timber, with the aid of said dolly, across said planks; that it was then and there the duty of defendants to exercise reasonable care and diligence to furnish a sufficient number of persons to perform the work of moving said timber with reasonable safety, so that plaintiff should not be unnecessarily exposed to danger in the performance of said work, but defendants did not exercise reasonable care and diligence in that regard, but negligently and without due diligence failed to furnish more than one person to assist said boss-carpenter and plaintiff in the work of moving said timber, and said carpenter and plaintiff and one additional person were not a sufficient number of persons to move said timber properly and with safety to plaintiff, which fact defendants well knew, or by the exercise of ordinary care and diligence ought to have known, but of which fact plaintiff had no notice or knowledge; that he had never had any experience in moving heavy timbers at that time, which fact defendant and said boss-carpenter well knew; and, by reason of the failure of defendants to furnish a sufficient number of persons to perform the work of moving said timber, and while plaintiff was engaged as aforesaid in assisting to move said timber, and while he was in the exercise of all due care and caution on his part, said timber slipped and fell from said dolly and struck plaintiff with great violence and threw him with great force against one of said abutments, and thence upon the ground, and into said river, and upon the ice therein, thereby striking and injuring his back and left hip, wrenching and spraining his spine, causing him a severe nervous and physical shock, and great pain and anguish, by reason whereof, etc.

The count was amended before the trial so as to give a more particular description of the runway, and alleged that said planks were to-wit: ten feet above the surface of said river, and extended from abutment to abutment the entire width of said river, the said abutments being,

to-wit: twenty feet apart, said planks constituting a continuous runway of to-wit: four feet in width for said dolly; that, in order to move said timbers by means of said dolly properly and with reasonable safety along said runway, it was necessary for defendants to furnish for such purpose a number of men to-wit: five men, to hold said timbers in place upon said dolly, and to prevent said timbers from rolling, falling, or shifting while said dolly with said timber was being moved along said runway, but that they failed so to do, etc.

A gang of men was engaged in excavating and constructing a section of the drainage canal in Cook county. One Burke, who employed the plaintiff on behalf of the defendants in error, was the general foreman of the defendants, and had known the plaintiff for eight or ten years. Plaintiff went to work November 22, 1892, and continued in the employ of the defendants until January 6, 1893, when the accident in question occurred. He was employed as boss of a wheel-barrow gang, engaged in taking out the dirt as it was excavated from the ditch, putting it on wheel-barrows and wheeling it up on the embankment; that the business of the defendants was divided into departments, and that one Charles Burns, called a "walking-boss" or general foreman, was plaintiff's immediate boss. On the morning of the accident plaintiff went to work with his wheel-barrow gang, and started his men to work. Burns came to him and told him to turn his men over to another foreman. Burns said that Morse, the carpenter foreman, had no men that morning, and he wanted plaintiff to go with Morse and help him on the bridge, Morse being the carpenter foreman employed by Agnew & Co. When Burns instructed plaintiff to go and help Morse on the bridge, plaintiff told Burns that he was not a carpenter and knew nothing about bridge building, and Burns told him to go along, and do what Morse should tell him to do. Plaintiff then joined the carpenter foreman and, under his direction,

began to assist him in moving some heavy timbers across a temporary bridge or runway spanning the DesPlaines river. The runway was one hundred and forty feet long, four feet wide, and about ten feet above the river, which was frozen over. The plan appears to have been to move some heavy logs twenty to twenty-six feet in length, and from twelve to sixteen inches in diameter at the butt, and about ten to twelve inches at the small end, along this runway for the purpose of making a temporary bridge for construction purposes. Morse, the carpenter foreman, provided an implement called a "dolly," a mechanical device consisting of a wooden platform of about fourteen by sixteen inches, under the center of which a roller was attached about four inches in diameter. The log was to be placed on the dolly, so that it would balance, and was then to be shoved along the runway on the roller. Morse and plaintiff started to move a log on the runway, but were unable to make much progress, when one Brown, a time-keeper of the defendants, who was passing by, gave the log a push, and so helped to start it, and then stepped back, and went off. Plaintiff and Morse continued without assistance to move the log when "the timber and dolly went down into the river." The big end went down first, and the little end struck plaintiff on the leg, and pitched him against the abutment. His breast struck against one of the abutments, and from there he fell down backwards onto the ice.

Morris St. P. Thomas, and Darrow & Thompson, for plaintiff in error.

O. W. Dynes, for defendants in error.

Mr. Justice Magruder delivered the opinion of the court:

In this case the Appellate Court by its judgment has reversed the judgment of the trial court, but did not remand the cause for another trial, and did not recite any

finding of facts in its judgment. It is to be presumed, that the Appellate Court found the facts the same as the trial court found them; otherwise it would have recited its findings in its judgment, as required by the statute. It is also to be presumed, that the Appellate Court did not reverse the judgment of the trial court for any erroneous rulings on questions of law arising on the trial, such as the giving or refusal of instructions, or the admission or exclusion of evidence, because, if it had reversed the judgment for any such erroneous rulings, it would have remanded the cause for another trial, so that such errors could be avoided. Inasmuch as the Appellate Court has found the facts the same as the trial court found them, and has not reversed its judgment for any erroneous ruling on the trial, it must be presumed that the Appellate Court held the facts, as found both by it and the trial court, to be insufficient to sustain the cause of action. That the presumptions thus indicated arise upon such a record, as is here presented, is decided by this court in the recent case of *Busenbark* v. *Saul*, 184 Ill. 343, where a large number of decisions upon this subject is referred to. It results, as a necessary consequence of the doctrine thus announced in *Busenbark* v. *Saul, supra*, that we can do nothing more upon this record than to look into the evidence, and determine whether it fairly tends to establish the cause of action alleged. If the evidence fairly tends to establish the cause of action alleged, the judgment of the Appellate Court must be reversed; otherwise it must be affirmed.

We are of the opinion, that the count of the declaration, set forth in the statement preceding this opinion, stated a cause of action; and we are furthermore of the opinion, that the evidence tends to establish the cause of action, so stated.

The evidence tends to show, that the plaintiff in error was employed to superintend a gang of diggers and wheel-barrow men, and for no other purpose. He was

called from the work, for which he had been employed, and placed temporarily at work in another department of the master's business under the control and direction of a foreman, whose work was in a distinct department from that of the plaintiff, and with whom the plaintiff had never been associated. Burns, the "walking-boss," was expressly informed by the plaintiff in error, before he went to work with the dolly, that he had no knowledge of such work. The evidence tends to show, that the defendants in error failed to supply a sufficient number of men to assist the carpenter foreman and plaintiff in error in moving the timber, and that the plaintiff in error, because of his lack of experience in such matters, had no knowledge or notice that more men were required to do the work in safety. The evidence tends to show, that plaintiff in error was injured by reason of the negligence of the defendants in error in not furnishing an adequate number of experienced men. The declaration alleges that the defendants in error, the masters of the plaintiff in error, were negligent in failing to furnish a sufficient number of men to do the work with safety to the plaintiff in error under the conditions, as they existed.

There is evidence tending to show, that work of the character, which the plaintiff in error was required to do, was dangerous, and that, in order to move the logs in question across the runway in question, it was necessary to have an adequate force of men acquainted with that particular work. Several witnesses testify, that the log when placed upon the dolly, should have been blocked, tied or in some way fastened thereto to prevent its shifting, and that, where the log was not blocked or fastened, a larger number of men was necessary to move it with safety than would otherwise have been needed. Several witnesses swear that there should have been five or six men to handle the log if it was blocked; and there is testimony tending to show that a greater force was necessary where the log was not blocked.

It was not necessary, that there should be a distinct allegation in the declaration of a failure to block or fasten the timber. That fact was only one circumstance, which rendered it necessary to employ more men on the work, and the declaration alleged the negligence of defendants in error in failing to furnish a sufficient number of men to do the work with safety to plaintiff in error.

It is as much the duty of the master under such circumstances as are here shown by the record in this case to furnish an adequate number of competent co-laborers as it is to furnish sufficient and suitable implements and machinery. "The master owes a duty to his servant to exercise reasonable care in supplying for the performance of the work an adequate number of fit and competent servants, and for failure of duty in this respect he is responsible in damages to a servant injured in consequence thereof." (Bailey on Master's Liability, p. 68; *Swift & Co.* v. *Rutkowski*, 182 Ill. 18).

Shearman & Redfield, in their work on Negligence (5th ed. sec. 193) say: "Another duty, which the master owes to his servant, is that of employing a sufficient number to do the work so far as may be necessary to enable them to do it in safety; but, as in other cases, he is only bound to use ordinary care for that purpose. It is not always consistent with such care, however, to provide a force just sufficient for the regular every-day course of business. Preparation must be made for those extraordinary emergencies which, although they do not frequently occur, are still known in common experience to be likely to occur occasionally." (*Flike* v. *Boston and Albany Railroad Co.* 53 N. Y. 549; *Booth* v. *Boston and Albany Railroad Co.* 73 id. 38; *Northern Pacific Railroad Co.* v. *Herbert*, 116 U. S. 642). In the latter case, the Supreme Court of the United States, speaking by Mr. Justice Field, said: "The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other instruments with

which he is to work. His contract implies that, in regard to these matters, his employer will make adequate provision that no danger shall ensue to him." (*Mad River and L. E. R. Co.* v. *Barker,* 8 Ohio St. 541; *Moss* v. *Pacific Railroad Co.* 49 Mo. 167).

Whether, in the present case, the master did furnish a sufficient number of men to assist in the work, in which plaintiff in error was engaged, was a question of fact for the jury. The jury found that fact in favor of plaintiff in error; and the Appellate Court must have also found the fact in the same way, inasmuch as it did not insert a contrary finding in its judgment.

The plaintiff in error was taken away from his regular employment of superintending a gang of diggers and wheel-barrow men, and was put to work in another and separate department of the master's business, that is to say, the carpenter-work department, under the supervision and control of a foreman of the latter department. It is well said: "The servant's implied assumption of risks, which accompanies and is a part of the contract of hiring, is confined to the particular work and class of work for which he is employed; and if the master orders him to work temporarily in another department of the general business where the work is of such a different nature and character that it cannot be said to be within the scope of the employment, and where he is associated with a different class of employees, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work." (14 Am. & Eng. Ency. of Law,— 1st ed.—p. 856; Buswell on the Law of Personal Injuries, sec. 212; *Lalor* v. *Chicago, Burlington and Quincy Railroad Co.* 52 Ill. 401; *Banks* v. *City of Effingham,* 63 Ill. App. 221; *Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614; *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Adams,* 105 Ind. 152; *Mann* v. *Oriental Print Works,* 11 R. I. 152; *Cole* v. *Chicago and Northwestern Railroad Co.* 71 Wis. 114; Bailey on Master's Liability, p. 220).

If the injury to the plaintiff in error occurred by reason of the failure of defendants in error to furnish a sufficient number of men to do the work, which he was required to assist in doing, it would seem to be immaterial whether the carpenter foreman, with whom the plaintiff in error worked, and the plaintiff in error were fellow-servants or not; but whether they were fellow-servants or not was a question for the jury. (*Louisville, Evansville and St. Louis Consolidated Railroad Co.* v. *Hawthorn*, 147 Ill. 226; *Chicago and Alton Railroad Co.* v. *O'Brien*, 155 id. 630; *Consolidated Coal Co.* v. *Scheiber*, 167 id. 539; *Illinois Steel Co.* v. *Bauman*, 178 id. 351). It must be presumed, here, that the question of fact as to fellow-servants was determined by the jury and the trial court in favor of the plaintiff in error; otherwise, the judgment in the court below would have been for the defendants.

It thus appears in this case, *first*, that the Appellate Court has found the facts the same as the trial court; *second*, that the Appellate Court found no errors of law committed by the trial court either in the giving or refusal of instructions, or in the admission or exclusion of evidence; *third*, that the Appellate Court must have reversed the judgment without remanding the cause, because it was of the opinion that the evidence does not fairly tend to establish the cause of action, alleged in the declaration. We are of the opinion that the Appellate Court erred in thus interpreting the evidence, and that there is proof in the case, tending to establish the cause of action alleged in the declaration.

The writer of this opinion entertains the view that the judgment of the Appellate Court ought to be reversed and the cause remanded to that court with directions to affirm the judgment of the superior court; but, in conformity with the opinion of the majority of the court, the judgment of the Appellate Court is reversed, and the cause is remanded to that court, being the Branch Appellate Court for the First District, with directions to

enter such judgment, reversing and remanding, or affirming the judgment of the superior court of Cook county, as, in their judgment, may be proper, or reciting in their judgment the facts found by them, if any such final determination of the cause is made by them as is provided for in section 87 of the Practice act. Leave is given to withdraw the record of the superior court filed in this court for the purpose of filing it in the Appellate Court.

*Reversed and remanded.*