·(No. 11285.—Reversed and remanded.)
Sotir Simonoff, Plaintiff in Error, *vs.* The Granite
City National Bank, Defendant in Error.

*Opinion filed June 21, 1917.*

1. Appeals and errors—*when Appellate Court is presumed to have found the facts the same as the trial court.* Where the Appellate Court makes no finding of facts different from the facts as found by the trial court it will be presumed to have found the facts the same as the trial court.

2. Bills and notes—*presentment to the drawee and notice of dishonor are necessary in order to charge drawer.* In the absence of any stipulation in the bill of exchange it is necessary, in order to charge the drawer, to present the bill to the drawee within a reasonable time, and in case it is not paid or accepted, to give notice to the drawer.

3. Same—*lack of funds in hands of drawee does not excuse presentment.* The fact that the drawer of a bill of exchange has no funds in the hands of the drawee will not excuse the holder from making presentment to the drawee and giving notice of non-payment.

4. Same—*drawer may waive presentment of the bill to drawee.* The drawer of a bill of exchange may waive his right to presentment of the bill to the drawee, and where the conditions of presentment, dishonor and notice are waived the contract to pay is freed from such conditions.

5. Same—*drawer by his conduct may show that he waived presentment.* Any acts or conduct on the part of the drawer calculated to lead the holder of a bill of exchange to believe that presentment to the drawee is waived or to mislead him and prevent him from treating the bill as he otherwise would, will operate as a waiver of the right to insist on presentment.

6. Same—*holder of dishonored foreign bill is entitled by law merchant to recover re-exchange.* By the law merchant the holder of a dishonored foreign bill of exchange is entitled to recover re-exchange in addition to the face of the bill, with interest and the expenses consequent on the dishonor of the bill.

7. Same—*what is re-exchange.* Re-exchange is the price that the holder of a dishonored bill must pay for a good bill of exchange for the same amount on the date of dishonor, in the currency of the country where the original bill was drawn and payable where the original bill was payable.

8. SAME—*drawer is liable for re-exchange when a bill is dishonored, regardless of change in rates of exchange.* Where a bill is presented and dishonored the drawer will be liable for necessary re-exchange no matter how materially the rate of exchange may have changed before the dishonor, but where the drawer has waived presentment and there is no dishonor of the bill there is no occasion for the payment of re-exchange.

9. SAME—*in an action upon bills of exchange the bills are admissible under the common counts.* In an action upon bills of exchange against the drawer by the one who purchased the bills the latter are admissible in evidence under the common counts.

. 10. SAME—*measure of damages in suit to recover money paid for foreign bill of exchange.* Where a foreign bill of exchange for a certain number of francs is purchased of a bank in the United States but owing to unexpected circumstances is never presented at the foreign bank, in an action against the local bank to recover the money paid the measure of damages, in case the local bank has waived presentment, ·is the value of the francs at the time the bill was drawn, together with interest from time of demand for repayment and not the depreciated value at the time of such demand.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

M. R. SULLIVAN, and MORGAN LEMASTERS, (C. H. BURTON, and C. W. BURTON, of counsel,) for plaintiff in error.

EDWARD J. VAUGHN, and WARNOCK, WILLIAMSON & BURROUGHS, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 16, 1914, Sotir Simonoff, a native of Macedonia, was about to leave Granite City, Illinois, for that country. His brother, Illio Simonoff, desired to send money to his former home in Macedonia, and with that object the two brothers went to the Granite City National Bank,

where Illio Simonoff purchased three foreign bills of exchange drawn by the bank on the Comptoir National Escompte de Paris, Paris, France, for 4000, 2000 and 1700 francs, respectively, making a total of 7700 francs. The bills of exchange were in the following form:

"No. 444098.                     CHECK FOR     Francs 4000

GRANITE CITY NATIONAL BANK
GRANITE CITY, ILL.

*May Sixteenth, 1914.*

"Pay out of the balance against this check to ..............
Sotir Simonoff .............. or order four thousand francs at
current rate.                     GRANITE CITY NATIONAL BANK,
......... *Hehner, a Cashier.*

To Comptoir National Escompte de Paris, Paris, France."

The drafts represented $1494.724 and the bank charged for exchange $12.496, making a total of $1507.22, which Illio Simonoff paid. The bank gave to Illio Simonoff three receipts for the money paid for the bills of exchange and he delivered the bills to Sotir Simonoff, who left on the same day for Macedonia. When Sotir Simonoff reached that country Servia and Macedonia were engaged in war with Austria-Hungary and he was drafted and taken to Monastir to join the army. He therefore gave the bills of exchange to Theodore Illoff, who was coming to the United States, with directions to return them to Illio Simonoff in Granite City. They were delivered to Illio Simonoff on July 16, 1914, and on or about July 18, 1914, he took the bills to the bank to get the money for them and had a conference with D. S. Medich, who was in charge of the foreign exchange department and who issued the bills of exchange and who could speak his language. Illio Simonoff made a number of applications at the bank for payment up to and including September, 1915, but they were not paid, and suit was brought in the circuit court of Madison county to the October term, 1915, in the name of Sotir Simonoff, named as payee in the bills, for the use

of Illio Simonoff, the beneficial plaintiff, who bought and paid for them. There was a special count, which was afterwards withdrawn, and the common counts, and a jury having been waived there was a trial by the court. Before judgment the plaintiff by leave of court filed a special count setting forth the drawing of the bills by the defendant, the presentation of the same to the defendant for payment and the waiver of presentment to the drawee with full knowledge of the facts. The court sustained a demurrer to that count and rendered judgment for the plaintiff for $1378.30, with costs. The plaintiff excepted to the finding of the court as to the amount of damages and sued out a writ of error from the Appellate Court for the Fourth District, and the defendant assigned cross-errors. The Appellate Court being of the opinion that no recovery could be had in the action, reversed the judgment without remanding the cause, and a writ of *certiorari* was allowed by this court to review the judgment of the Appellate Court.

The Appellate Court made no finding of facts different from the facts as found by the trial court and therefore found the facts the same as the trial court but decided the facts were not sufficient to sustain the cause of action. *Busenbark* v. *Saul*, 184 Ill. 343; *Supple* v. *Agnew*, 191 id. 439; *Kantzler* v. *Bensinger*, 214 id. 589; *Nonotuck Silk Co.* v. *Adams Express Co.* 256 id. 66; *Dromgold* v. *Royal Neighbors*, 261 id. 60; *Laughlin* v. *Norton*, 267 id. 476.

. There was no controversy as to the facts above stated and no material difference in the evidence affecting the legal rights of the parties. The remaining facts, as conclusively settled by the judgment of the Appellate Court, are as follows: When Illio Simonoff presented the bills to Medich on or about July 18, 1914, he was told by Medich that he could come back within six or seven months and get his money. He went again to the bank in eight or nine days with George Gliroff and was told by Medich that the time had not yet come; that when the time came he would

get his money, and to wait a couple of days and come back and get the money. Along in the middle of the summer of 1915, about a year after the bills had been presented to the defendant, Illio Simonoff went to the bank with N. Alabach as interpreter and had a conversation with the cashier, D. J. Murphy. Alabach asked the cashier why they would not pay the money on the drafts, and Murphy said they could not pay it because they would have to lose on the exchange. Illio Simonoff went to the bank on another occasion, on July 15, 1915, with George Manioff, when the cashier said that they could not pay that much loss; that exchange was away down; that he had received a letter from the New York bank, which he could not find, and he told them to come back later. A week afterward they went back, when the cashier was willing to pay the bills at the current rate of exchange, which had changed greatly on account of the war. This would mean a considerable loss to Simonoff and he refused to accept payment on that basis.

It is argued in support of the judgment of the Appellate Court that there was no liability of the defendant, as drawer of the bills of exchange, because they had not been presented for payment to the bank of Paris, and in the absence of presentment for payment and notice of non-payment and dishonor the defendant was discharged, and this appears to have been the view of the Appellate Court. The contract relation between the drawer and payee of a bill of exchange is that the drawer engages that on due presentment the bill will be accepted or paid, or both, according to its tenor, and if it be presented and the necessary proceedings on dishonor be duly taken he will pay the amount to the holder or to any indorser who may be compelled to pay it. Therefore, in the absence of any stipulation in the bill, it is necessary, in order to charge the drawer, to present the same to the drawee in a reasonable time, and in case the bill is not paid or accepted, to give notice to the drawer. (*Industrial Bank of Chicago* v. *Bowes,* 165 Ill.

70; *Montelius* v. *Charles*, 76 id. 303; Negotiable Instrument act, arts. 6, 7.) It does not appear that the defendant had any money or balance in the Paris bank out of which the bills were to be paid and the officers of the bank did not know what the words "at current rate" meant, but the method in use was to advise the Hanover National Bank, correspondent of the defendant in New York City, that bills of exchange had been issued and the Hanover National Bank would advise the bank in Paris. So far as known the Hanover National Bank had no money in the Paris bank nor any indebtedness due it from the bank but the business was done by credits on a mutual account. The simple fact that the drawer of a bill of exchange has no funds in the hands of the drawee will not excuse the holder from making presentment to the drawee and giving notice of non-payment, (*Walker* v. *Rogers*, 40 Ill. 278,) and it appears that provision had been made for the payment of any bill that might be drawn by the defendant on the Paris bank through notice to the Hanover National Bank. When the bills were returned to defendant it was under no legal liability to pay them unless a state of war and the drafting of Sotir Simonoff would excuse presentment, and if there was no legal liability to pay the bills without presentment to the Paris bank the defendant could not have been compelled to do so, but its right in that regard was one that could be waived, and the claim of the plaintiff was that it had been waived. The claim being that presentment was waived, it is not a question in the case whether the circumstances would legally excuse presentment.

Section 108 of the Negotiable Instrument act provides that notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be express or implied. As it may be implied, any acts or conduct calculated to lead the holder of the bill to believe that presentment is waived, or to mislead him and prevent him from treating

the bill as he otherwise would, will operate as a waiver. Section 110 provides that a waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver not only of a formal protest but also of presentment and notice of dishonor, and upon general legal principles there is no reason why the right of the defendant to have the bill presented to the Paris bank might not be waived. The defendant and payee were the only parties to the contract and there was no contract relation of the Paris bank to be affected, since there is no contract relation between the drawee and the other parties until acceptance. In this case it is clear that there was a waiver of presentment, and the presentment being waived, it is, of course, wholly immaterial whether the bill would have been accepted and paid under the existing plan of charges and credits. The contract of the defendant being to pay the amount of the drafts upon conditions of presentment, dishonor and notice, when the conditions were waived the contract to pay was freed from them and the liability became absolute.

The trial court fixed the amount of damages according to the rate of foreign exchange on Paris at the time of the trial, on February 16, 1916, instead of at the time of the presentment of the bills to the defendant, on July 18, 1914, with legal interest from that date. By section 1 of the former statute the drawer of a foreign bill of exchange, in case of presentation, non-acceptance or non-payment and notice, was liable to pay the face of the bill, with legal interest from the time it ought to have been paid and ten per cent damages in addition, together with costs and charges of protest, but that section was repealed by the Negotiable Instrument act, which contains no provision on the subject. By the law merchant the holder of a dishonored foreign bill of exchange is entitled to recover re-exchange in addition to the face of the bill, with interest and the expenses

consequent on the dishonor of the bill. Re-exchange is the price that the holder of a dishonored bill must pay on the date of dishonor in the currency of the country where the original bill was drawn, payable where the original bill was payable, for a good bill, for the same amount of money. (*Pavenstedt* v. *New York Life Ins. Co.* 203 N. Y. 91; Ann. Cas. 1913A, 805.) That would exactly compensate the payee for the damages suffered, and the drawer would be liable for the re-exchange, no matter how materially the rate might have changed before the dishonor. In this case the bills had not been dishonored and there was no occasion for the payment of re-exchange, but presentment having been waived, the plaintiff was entitled to receive at the time of the waiver, in the currency of this country, the market value of 7700 francs. That amount was then due and he was entitled to recover interest from that date. The value of the 7700 francs in the currency of this country depended on the rate of exchange at the time he became entitled to such value, and he was not required to accept the value of 7700 francs more than a year afterward, when they had depreciated in the markets of this country. The trial court did not adopt the correct method of ascertaining the damages but deducted the rate of exchange in force at the time of the trial and in this particular erred.

The bills of exchange were admissible under the common counts. *Brower* v. *Rupert,* 24 Ill. 182.

The Appellate Court erred in deciding that there was no right of action and in not sustaining the error assigned concerning the measure of damages, and therefore the judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*