(No. 13442.—Reversed and remanded.)

THE DANDYLINE COMPANY, Appellant, *vs.* HARRY LINSK,
Appellee.

*Opinion filed October 23, 1920—Rehearing denied Dec. 10, 1920.*

1. PRACTICE—*mere statement of facts in opinion of Appellate Court is not finding of facts required by statute.* The mere statement of the facts in a case in the opinion of the Appellate Court is not a compliance with the statutory requirement that said court shall make a finding of facts and recite the same in its judgment should it find the facts different from the finding of the trial court.

2. APPEALS AND ERRORS—*when Supreme Court must presume Appellate Court found facts insufficient to sustain action.* Where the Appellate Court reverses a judgment for the plaintiff without remanding and makes no finding of facts in its opinion, the Supreme Court must presume that the Appellate Court found the facts the same as the trial court and that they were insufficient to sustain the cause of action.

3. SAME—*when judgment of Appellate Court must be reversed.* Where the Supreme Court is of the opinion that the plaintiff has stated a cause of action which the evidence tends to establish, a judgment of the Appellate Court reversing a judgment for the plaintiff without remanding or making a finding of facts is erroneous and must be reversed.

4. CONTRACTS—*when existence of contract is a question of fact.* Where an alleged contract is wholly in writing its interpretation is solely a matter of law and not a question of fact, but where the plaintiff files an affidavit of claim alleging that a contract was made between himself and the defendant, and the defendant files an affidavit of merits alleging that no such contract was made, and evidence must be introduced to maintain the issues, controverted questions of fact are involved.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. E. K. JARECKI, Judge, presiding.

ROSENTHAL, HAMILL & WORMSER, (CHARLES H. HAMILL, and HARRY MARKHEIM, of counsel,) for appellant.

WILKERSON, CASSELS, POTTER & GILBERT, (RALPH F. POTTER, and EARL D. HOSTETTER, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant brought suit in the municipal court of Chicago against appellee for damages because of the alleged failure of appellee to carry out a contract to deliver a certain quantity of children's dresses. After the issues were settled the case was heard in the municipal court by the judge without a jury and judgment entered for appellant in the sum of $2970. The cause was appealed to the Appellate Court for the First District, where the judgment was reversed and the cause remanded as to certain portions thereof. Before the close of the term at which the judgment was entered by the Appellate Court the plaintiff in the trial court petitioned the Appellate Court to modify its judgment and strike therefrom that part which remanded the cause to the municipal court for a new trial, stating that it had no additional evidence to offer if the case were tried again. The Appellate Court accordingly modified its judgment to one of reversal, only, and thereupon allowed a certificate of importance, and the cause has been brought to this court by appeal for further review.

The appellant, a corporation located in Chicago, was engaged at the time of the transaction in manufacturing and selling children's dresses. Appellee was a resident of Philadelphia, engaged in the manufacture of children's and misses' dresses. It appears that prior to the transaction the parties had had some business dealings together. On November 10, 1917, appellee and one of his representatives met with Myres and Pincus, officers of appellant, at appellant's place of business in Chicago, and as the result of their negotiations there was drawn up and signed by both parties the following instrument:

Bought of Harry Linsk & Co.
   Town, Philadelphia, Broad
     & Wallace Sts.
   State, Pa.

How Ship, ..................
When, Dec., Jan. & Feb.
Salesman, . ................

| Lot No. | Price | Quantity | Color |
|---------|-------|----------|-------|
| 649 | $13.00 | 100 doz. | Asst. to follow |
| 605/648 | 12.50 | 100 dz. | ″    ″    ″ |
| 642/636 | 9.50 | 100 dz. | ″    ″    ″ |
| 607/643 | 9.50 | 100 dz. | ″    ″    ″ |

2% 10 day  60 days dating
3% 10 days

MAGNUS MYRES, V.-P.
O. K., H. L.

The figures on this document, 648, 636 and 643, designated dresses in plain colors of the respective styles indicated as Nos. 605, 642 and 607. The phrase "Asst. to follow," meant that the assortment of models and sizes would be detailed later by the Dandyline Company to Linsk & Co.

November 13, 1917, appellant wrote appellee in part as follows: "Confirming order which we placed with you for 400 dozen dresses, wish to state that we are sending you by express samples of these dresses. You will note that No. 607 is made in plaid and also comes in plain color under No. 643. [Here follow notes as to other numbers.] As soon as these samples are received, will you kindly make up sample which you are to submit, together with swatch of the materials to be furnished, and we will then O. K. same and return to you, together with list showing sizes and colors desired? Inasmuch as we are in special rush for these dresses, we would ask you to kindly make special effort and rush samples to us at once." There was subsequent correspondence between the parties with reference to samples and swatches (strips of cloth) intended to indicate colors and materials.

On November 24, 1917, appellee wrote appellant: "We have to-day expressed to you style 649, 605 and 642, with swatches attached showing the different colors. Style 636

we did not duplicate as yet, as we haven't the desirable cloth on hand. Upon receipt of these samples please send us your sizes so that we can go ahead while our piece goods stock is changing daily and we therefore cannot afford to wait too long."

November 28, 1917, appellant wrote appellee: "In reply to your letters of November 23 and 24, regret to state that samples have not as yet been received. We are, however, keeping after the express companies. * * * However, we wish to state that in order not to have any further delay we are enclosing herewith our order and as soon as samples are received we will wire you an O.K. on it. As per our verbal conversation, we are in need of No. 649 first and No. 605 second. We trust, therefore, that you will put these two lots in work at once and express to us as soon as you possibly can some of each size of each of them, in order that we may complete our orders."

December 1, 1917, appellant acknowledged receipt of certain samples from appellee, stating among other things the following: "Inasmuch as these dresses are now satisfactory with the changes specified above, we trust you will put them in work at once and rush No. 605 to us by express as fast as it is ready." The letter also stated that sample as to No. 649 was not at all satisfactory, and requesting appellee in selecting material to kindly "try and get closer to our sample."

December 3, 1917, appellee wrote appellant stating his position relating to letter of December 1, and continued: "In reference to style 649, we regret very much that we can not give you any different stripe than the one submitted. These stripes are not Amoskeag stripes. They are Bates zephyr, which is much better cloth than the Renfew gingham. As far as we think, this garment looks just as good as the original sample."

December 5, 1917, appellant wrote appellee: "We are in receipt of your valued favor of the 3d and wish to state

we wired you that it would be satisfactory to have you make No. 605 and 636 and 642 as per your letter, and this we now beg to confirm.   Make 605 in the Berwick stripe, as per your sample.   Make No. 636 and 642 with repp collar and as per the corrected sample, which we believe you have received by this time.   In reference to No. 649, regret to state we cannot use same in the material as per your sample.   However, our Mr. Myres expects to be in Philadelphia the last of this week or the first of next and will take this matter up with you."

December 18, 1917, appellee wrote appellant that he could not get the material promptly from the mills according to sample of style 607 and would consider that order as canceled unless appellant could order for a late delivery.

The record shows that the Myres referred to in the letter of December 5 visited Philadelphia shortly thereafter and had a conversation with the appellee, in which appellee stated that Nos. 605 and 642 were being made up and would be shipped very soon, but as to Nos. 607 and 649 he was waiting for ginghams from the mills in order to make the dresses in suitable fabrics.   The testimony also tends to show that these two men walked through appellee's factory and Myres pointed out some goods and asked appellee to submit that in dresses of No. 649; that appellee said he would, and would send a sample of the dress made in that stripe.

December 26, 1917, appellant received the first shipment of 44 dozen dresses and on the same day wrote to appellee acknowledging such receipt.   The letter in part reads: "Dresses No. 605 have come in, in a most unsatisfactory condition.   We to-day had your Mr. Lewis out to our factory and have shown him that the piece goods used is inferior to the samples submitted by you and that the workmanship on the dress is unsatisfactory as well.   *   *   * We must, however, return No. 605, and request that you immediately fill our order in material as per sample sub-

mitted to you by us and as per sample submitted by you
to us," and asking what should be done with the dresses,
stating that those pertaining to sample No. 642 appellant
would keep. The letter also asked when sample No. 607
would be shipped. It also stated that sample No. 649,
"which you were going to make up and submit to us for
O. K., has not as yet been received."

December 29, 1917, appellee replied attempting to de-
fend the material employed in style No. 605, stating: "Of
course, the original piece goods was of a lighter shade.
However, this was the only thing we could get from the
mill to be near the original and had to make the best of
it." The letter also stated that as soon as the dresses of
style No. 605 were returned appellee would credit appel-
lant for them, and also made some further statement as
to No. 649.

January 2, 1918, appellant wrote appellee stating the
dresses of style 605 were being returned and that it would
wait for the sample of style No. 649; that it insisted on
appellee submitting sample of style No. 607 at once, and
that it would like to know when the dresses made up as per
sample of Nos. 605, 642 and 636 would be delivered.

January 5, 1918, appellee wrote appellant that as the
mill advised him that it would not be able to send the
piece goods he would be unable to deliver the merchandise
Nos. 642 and 636; that "you state your order was taken
in good faith. We agree with you, but same was also taken
subject to our getting the materials from the mills. Our
orders were also placed in good faith, but can do nothing
in receiving no deliveries."

January 9, 1918, appellant wrote appellee that it was
willing to allow appellee to make substitutions where nec-
essary, provided the material was equally as good as the
sample submitted to him; and further: "Your contention
that the mills are not delivering is evidently an evasion, and
we wish to inform you that we are holding you liable for

loss of profits incurred by us through your failure to deliver dresses as per our order signed and accepted by you. We find ourselves now in a position of having accepted orders from our customers expecting to receive dresses from you with which to fill same, and now you inform us you will be unable to make same. It will therefore be necessary for us to have them made elsewhere, if possible, and any losses incurred by us you will be held liable for."

Magnus Myres testified that the samples upon which the original order was based were acceptable to appellee before the order was signed; that the course of the market for ginghams from November to January was upward; that no goods were delivered under No. 649; that appellant took 25 dozen dresses of No. 605 and they were of inferior material and of poor quality; that appellant accepted 19 dozen of No. 642 and that no other goods were received; that in his interview with appellee in Philadelphia on December 26, 1917, appellee told him that the material for style No. 607 could not be secured from the mills before May, and that he (Myres) then took that sample away. Appellee testified with reference to this interview that he talked with Myres and told him that it would be impossible to get the exact pattern but that he would get something near, and that Myres said it would be satisfactory to submit samples; that the samples were forwarded to Chicago; that appellant did not approve of sample No. 649 and no goods were shipped upon it; that appellant forwarded samples on Nos. 649, 605 and 642; that 25 dozen were shipped on No. 605, and appellee made up another 75 dozen and was ready and willing to ship the balance; that appellant returned the 25 dozen to appellee and was given credit therefor; that appellee submitted a sample which had been approved, and 19 dozen were shipped but that he had no cloth for the balance; that in his talk with Myres in Philadelphia in December, Myres said he still wished to have No. 649, and that he answered that appel-

lant had not approved sample No. 649; that he showed Myres the garment again, and Myres said he could not use it; that Myres took away samples of Nos. 642 and 607. The testimony of these two witnesses is not in entire harmony as to what took place at their interview in Philadelphia, but the evidence tends to show that there was an understanding that appellant should pass on certain samples that Myres took away with him and let appellee know the result.

Counsel for appellant argue that on this state of the record the Appellate Court erred in finding that on the facts shown therein a valid and binding contract had not been proved; that the question whether the facts in the record constituted a contract was purely a question of law. Counsel for appellee argue just as earnestly that the question whether the evidence showed a valid and binding contract between the parties was one of fact, which cannot be passed upon by this court.

No propositions of law were submitted by either party on the trial before the judge in the municipal court.

The Appellate Court made no finding of facts under section 120 of the Practice act. It is suggested by way of argument that it appears from the opinion of the Appellate Court that that court found the facts different from what they were found by the municipal court. This may be true, but the statute requires that the Appellate Court recite its finding of facts in its final order and judgment or decree. The statement of facts in the opinion is not in compliance with the statute. (*Centennial Nat. Bank* v. *Farrell,* 166 Ill. 513; *Laughlin* v. *Norton,* 267 id. 476, and cases cited.) On this record, therefore, it must be presumed that the Appellate Court found the facts the same as did the municipal court, otherwise it would have recited its findings in its judgment, as required by statute. It must also be presumed that the Appellate Court did not reverse the judgment of the municipal court for any erroneous rulings on questions

of law arising on the trial, because if it had it would have remanded the case for another trial, upon which the errors could be avoided. It must also be presumed, having found the facts the same as the municipal court found them and not having reversed its judgment for any erroneous ruling on the trial, that it held the facts as found both by it and the municipal court insufficient to sustain the cause of action. (*Busenbark* v. *Saul*, 184 Ill. 343; *Supple* v. *Agnew*, 191 id. 439.) Under the decisions just cited, therefore, the conclusion necessarily follows that we can do nothing more upon the record than to look into the evidence and determine whether it fairly tends to establish the cause of action alleged. If it does, the judgment of the Appellate Court must be reversed; otherwise it will be affirmed.

If the alleged contract is wholly in writing its interpretation is solely a matter of law and not a question of fact; (*Carstens Packing Co.* v. *Sterne & Son Co.* 286 Ill. 355;) but "wherever an issue is made by the pleadings and evidence must be introduced to maintain the issue, controverted questions of fact are involved in the case which include not only evidentiary facts but ultimate facts, even though there be no conflict in the testimony or the evidence may be agreed upon and embodied in a stipulation of facts." (*Navratel* v. *Curtis Door and Sash Co.* 290 Ill. 526.) The affidavit of claim filed in this case alleged that a contract had been made between appellant and appellee with reference to the transaction in question, while the amended affidavit of merits filed by appellee in the municipal court alleged that no such contract had been made and there was no ground for recovery. Therefore, under the doctrine laid down in the case just cited, as evidence was necessarily introduced to maintain the issues, controverted questions of fact are involved.

We are of the opinion that the affidavit of claim filed in the municipal court stated a cause of action and that the evidence tended to establish the cause of action so

stated. This being so, the judgment of the Appellate Court reversing the judgment of the municipal court without a finding of facts was wrong. Therefore the judgment of the Second Branch Appellate Court for the First District will be reversed and the cause will be remanded to that court, with directions to enter such judgment reversing and remanding or affirming the judgment of the municipal court as in its judgment may be proper, or reciting in its judgment the facts found by it, if any such final determination of the cause is made, as is provided for in section 120 of the Practice act.

*Reversed and remanded, with directions.*