FOUNDRY MANUFACTURING COMPANY *v.* W. V. FARR.

January Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed February 14, 1923.

*Evidence—Improper Conduct of Counsel—Exceptions Too General to Require Consideration—Bills and Notes—Necessity of Demand and Notice on Overdue Notes—Waiver.*

1.  In an action against an indorser of a promissory note, where it was claimed that the defendant had fraudulently inserted the words "without recourse" in the indorsement after delivery, *held* that evidence that defendant had represented to plaintiff that the note was well secured and that the signer could pay, and other evidence tending to reflect on defendant's character for truthfulness, was irrelevant to any issue in the case, and its admission prejudicial error.

2. The conduct of plaintiff's counsel, during his cross-examination of the defendant, in approaching the witness with his finger pointed at him in a threatening manner, and, when defendant's counsel objected, in retorting, "He is lucky to not get more than that," while unjustifiable and improper, *held* not to be shown by the transcript to have been prejudicial.

3. Where upon objection to certain testimony the court allowed the defendant an exception "to all along this line, to save interruption," and then ten pages of transcript followed partly "along this line" and partly not, interspersed with objections and exceptions, the exceptions will be regarded as too general to require attention.

4. An indorser of a note to whom notice of dishonor has not been given is discharged, unless he has expressly or impliedly waived that requirement of the law.

5. An indorser of an overdue note, payable at a specified time, is entitled to demand and notice as if the note fell due on the date of its indorsement; but if an overdue demand note is indorsed, demand and notice within 60 days from the date of the indorsement is required to charge the indorser.

6. A waiver of demand and notice, or either of them, may be inferred, from any conduct on the part of the indorser, verbal or otherwise, reasonably manifesting an intention to dispense with the right to those formalities.

7. A waiver is a voluntary relinquishment of a known right.

8. A waiver of demand and notice, being in derogation of an indorser's statutory right, will not be inferred from doubtful acts or language, but must be evidenced by some act or conduct of an unequivocal character.

9. The insolvency of the maker of a note alone, though known to the indorser, does not amount to waiver of demand and notice, and does not relieve the holder of the necessity of proving demand and notice in a suit against the indorser, even though the instrument be indorsed when overdue.

10. The fact that an indorser retained an interest in the avails of a note, when paid, did not indicate an intention to waive his rights as indorser.

11. An agreement between the indorser and the holder of a note made before its maturity that an extension of time shall be granted the maker amounts to a waiver of demand and notice.

12. A waiver of demand and notice may arise from any understanding or arrangement between the indorser and the holder that is of such a character as to reasonably satisfy the mind that a waiver was intended.

13. Where at the time the payee of a note indorsed and delivered it, he asked the indorsee to wait on the maker and not press for payment on the note for six months, to which the indorsee assented, the arrangement was inconsistent with the idea that demand and notice were required within 60 days from date of indorsement, and a waiver of demand and notice could be inferred therefrom.

ACTION OF CONTRACT on a promissory note. Plea, the general issue. Trial by jury at the March Term, 1922, Chittenden County, *Willcox,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Reversed and remanded.*

*Max L. Powell* and *Hale K. Darling* for the defendant.

*Chas. F. Black* for the plaintiff.

POWERS, J. The plaintiff seeks to hold the defendant as indorser of a promissory note dated May 18, 1920, signed by L. D. Ingalls, and payable to the defendant's order, on demand. On May 16, 1921, the defendant exchanged automobiles with the Champlain Motor Company—a branch of the plaintiff corporation doing business at Burlington—and in that transaction transferred to the former this note, having first indorsed the same by signing his name to an indorsement on the back thereof. The note more than covered the difference between the cars, and the Motor Company gave the defendant a writing showing the amount that would be due him on payment of the note. When the note was produced in court, the words "without recourse" appeared in the indorsement. The plaintiff claimed, and its evidence tended to show, that these words were fraudulently inserted after the defendant had delivered the note as aforesaid. The defendant claimed, and his evidence tended to show, that he wrote these words when he signed the indorsement and before such delivery. It was admitted that no adequate

notice of the dishonor of the note had been given the defendant. The plaintiff claimed, however, that the defendant had impliedly waived such notice.   The case was tried below without pleadings, and such proceedings were there had that the court submitted two questions to the jury:   (1) Were the words "without recourse" inserted in the indorsement by the defendant after its delivery to the Motor Company? and (2) if so, did the defendant waive presentment and notice?     The jury returned a verdict for the plaintiff, thereby, in effect, answering both questions in the affirmative.

[1]   Subject to the defendant's exception, R. S. Cutting, the manager of the Motor Company, with whom the defendant dealt in making the exchange of cars, was allowed to testify that during the negotiations, the defendant represented to him that the note was well secured and that the signer could pay.   It would be a fair inference from the evidence that this statement, if made, was false, and that the defendant then knew it.   Other evidence tending to reflect on the defendant's character for truthfulness was admitted over his objection and exception.   This line of evidence was irrelevant to any issue in the case, and should have been excluded.   In some circumstances, we might say that no harmful results followed its admission.   But here, the defendant was charged not only with attempting a deliberate fraud, but with committing a very serious crime.   G. L. 6902. The proof was largely his word against Cutting's.   Anything, then, that tended to impeach his character for truthfulness would naturally, if not inevitably, prejudice his standing as a witness. This exception is sustained, and we are satisfied that the evidence was harmful.   *Goodell* v. *Drew,* 85 Vt. 408, 82 Atl. 680.

[2]   An exception was taken to the conduct of the plaintiff's counsel during his cross-examination of the defendant.   As near as we can tell from the transcript, the attorney approached the witness with his finger pointed at him in a threatening manner; and when counsel for the defendant objected to his method, he retorted, "He is lucky to not get more than that."   The plaintiff now admits that this was improper, but insists that no harm is shown.   To all this we agree.   The whole incident was unjustifiable and improper, but there is not enough shown by the transcript to enable us to say that the defendant was prejudiced by anything that was said or done.

[3]   The maker of the note, Ingalls, was a tenant on the defendant's farm, and was used as a witness for the plaintiff. He was asked about his relations and transactions with the defendant, and when objection was made, the court allowed the defendant an exception in the following language: ''The defendant may have an exception to all along this line, to save interruption.'' Then follows ten pages of transcript, partly ''along this line,'' and partly not, interspersed with objections and exceptions. In these circumstances we do not sift the testimony to find what is objectionable, but disregard the exception as too general to require attention.

Several of the exceptions saved by the defendant relate to evidence tending to show that the maker of the note, for lack of funds, was unable to pay it, and that the defendant all along knew all about his financial condition. These are properly for consideration with the main question in the case—raised both by a motion for a directed verdict and an exception to the charge— was there evidence fairly and reasonably tending to show that the defendant, by his conduct, waived demand and notice?

[4, 5]   The jury having found by its verdict that the words ''without recourse'' were fraudulently inserted in the indorsement after delivery, the defendant stands as an indorser of the note, G. L. 2932, and notice of dishonor not having been given him, he is discharged, G. L. 2958, unless he has expressly, or impliedly waived that requirement of the law, G. L. 2978. The fact that the note was long overdue—so far as charging an indorser is concerned—did not excuse the omission. One who indorses an overdue note payable at a specified time is entitled to demand and notice as if the note fell due on the date of its indorsement. *Landon* v. *Bryant*, 69 Vt. 203, 37 Atl. 297. But if an overdue demand note is indorsed, demand and notice within 60 days from the date of the indorsement is required to charge the indorser. *Verder's Exr.* v. *Verder*, 63 Vt. 38, 21 Atl. 611. At least, this was so prior to the passage of the Negotiable Instruments Act, by force of G. L. 2864. And it is so now, unless that section is inconsistent with the Act, G. L. 2866. That it is not thus inconsistent is plain enough. G. L. 2940 provides that demand paper shall be presented within a reasonable time after its issue. This was so by the law merchant. *Verder's Exr.* v. *Verder, supra.* G. L. 2864 defines what shall be a reasonable

time in such cases. It is obvious that it was enacted to remove all the uncertainty incident to a determination of this question of fact. The desirability of a definite predetermination of that question is as great now as then, and it was, without doubt, the intention of the Legislature that this provision should continue in force.

[6, 7] A waiver of demand and notice, or either of them, may be inferred from any conduct on the part of the indorser, verbal or otherwise, reasonably manifesting an intention to dispense with the right to those formalities. The rule is otherwise stated as follows: A waiver may be implied from any acts or conduct calculated to lead the holder to believe that a waiver is intended. *Simanoff* v. *Granite City Nat. Bank*, 279 Ill. 248, 116 N. E. 636. Still another form of a statement is as follows: A waiver may be implied from any conduct or statement by which the holder is reasonably induced to believe that such a waiver is intended. *Linthicum* v. *Bagby*, 131 Md. 644, 102 Atl. 997. The accuracy of any statement of the rule, however, must be tested by a consideration of the nature and characteristics of a waiver. It is defined to be a voluntary relinquishment of a known right. *Donahue* v. *Ins. Co.*, 56 Vt. 374. It is not, however, an estoppel. It involves the act or conduct of one of the parties only, and does not necessarily imply that the other party is misled to his prejudice. *Webster* v. *State Mutual Fire Ins. Co.*, 81 Vt. 75, 69 Atl. 319. The question here, then, involves only, the conduct of the indorser. Whether or not the Motor Company relied upon it or was mislead by it is altogether immaterial. Waiver may occur before or after the time for giving notice has arrived. G. L. 2978. This provision confirms our view as to the character of a waiver, for if made after default in giving notice, the holder is not in a position to rely upon it for anything or to be misled by it. It involves a voluntary choice, and if the indorser chooses not to require notice, his choice is final.

[8] A waiver, being in derogation of an indorser's statutory right, will not be inferred from doubtful acts or language. *Worley* v. *Johnson*, 60 Fla. 294, 53 So. 543, 33 L. R. A. (N. S.) 639; *Glidden* v. *Chamberlin*, 167 Mass. 486, 46 N. E. 103, 57 A. S. R. 479. It must be evidenced by some act or conduct of an unequivocal character. *Barber* v. *Vinton*, 82 Vt. 327, 73 Atl. 881; *Rogers* v. *Whitney*, 91 Vt. 79, 99 Atl. 419.

[9, 10]   The insolvency of the maker alone, though known to the indorser, does not meet the requirements of this rule, and does not relieve the holder of the necessity of proving demand and notice in a suit against the indorser.   *Haynes Auto Co.* v. *Shepherd,* 220 Mich. 231, 189 N. W. 841; *Buck* v. *Cotton,* 2 Conn. 126, 7 A. D. 251; *Farnum* v. *Fowle,* 12 Mass. 89, 7 A. D. 35; *Nash* v. *Harrington,* 2 Aik. 9, 16 A. D. 672.   And this is so, though the instrument be indorsed when overdue.   *Greely* v. *Hunt,* 21 Me. 455; *Nash* v. *Harrington, supra.*   Nor does the fact . that the defendant retained an interest in the avails of the note, when paid, indicate an intention to waive his rights as indorser.

[11, 12]   But an agreement between the indorser and the holder, made before the maturity of the note, that an extension of time shall be granted to the maker, amounts to a waiver of demand and notice.   It was, in effect, so held in *Marsh* v. *Babcock,* 2 D. Chip. 124, and re-asserted in *Russell* v. *Buck,* 11 Vt. 166.   It is generally so held.   *Amoskeag Bank* v. *Moore,* 37 N. H. 539, 75 A. D. 156; *Sheldon* v. *Horton,* 43 N. Y. 93, 3 A. R. 669; *Gove* v. *Vining,* 7 Metc. (Mass.) 212, 39 A. D. 770; *Moll* v. *Roth Co.,* 77 Or. 593, 152 Pac. 235.   A waiver may arise from any understanding or arrangement between the indorser and holder that is of such a character as to reasonably satisfy the mind that a waiver was intended.   *Glaze* v. *Ferguson,* 48 Kan. 159, 29 Pac. 396; *Fuller* v. *McDonald,* 8 Greenl. (Me.) 213, 23 A. D. 499.

[13]   It appeared, without controversy, at the trial, that at the time the defendant delivered this note to the Motor Company, he asked its manager to wait on the maker for six months and not press for payment on the note during that time; and that the Motor Company assented to this, and did not press for payment until the expiration of that time.   This arrangement was wholly inconsistent with the idea that demand and notice were required within 60 days from the date of the indorsement. That the maker of the note was not a party to it is immaterial. *Sheldon* v. *Horton, supra.*   When Farr asked for this extension, he, in effect, asked that no demand be made on Ingalls until its expiration, at least.   *Cady* v. *Bradshaw,* 116 N. Y. 188, 22 N. E. 371, 5 L. R. A. 557.   The parties understood that the maker could not pay until fall, and that no attempt should be made to collect the note until then.   In this state of the proof, a waiver could have been inferred, if, indeed, it did not necessarily follow

therefrom. *Hudson* v. *Wolcott,* 39 Ohio St. 618; *Walker* v. *Graham,* 21 La. Ann. 209; *Glaze* v. *Ferguson, supra; First Nat. Bank* v. *Ryerson,* 23 Iowa 508. It is held in the Louisiana case cited that in such circumstances no demand and notice is necessary until the expiration of the extension; while in the Ohio case cited it is held that the necessity for demand and notice is finally dispensed with. This question is not here involved, and we give it no attention.

It follows that the defendant's motion for a verdict was properly overruled, for it was predicated on the assumption that there was no evidence tending to show a waiver. But the charge was erroneous, for it was to the effect that the defendant's knowledge of the maker's inability to pay was, with the defendant's interest in the note, evidence of a waiver.

The other exceptions relied upon are either too inadequately briefed or too harmless to require attention.

*Reversed and remanded.*