[No. 36154.    Department One.    June 27, 1963.]

Lawrence M. Voelker, *Appellant*, v. Hilliard Joseph *et al.*,
*Respondents.**

*Cheney & Hutcheson*, by *Elwood Hutcheson*, for appellant.

*Splawn & Bounds*, for respondent.

Rosellini, J.—In this action, an apple grower sought to recover a balance allegedly due on two contracts for the

* Reported in 383 P. (2d) 301.

sale of apples to a dealer in Yakima. The dealer claimed that he had suffered losses on sales to purchasers outside this state because the apples, which had been packed, stored, and shipped by the grower, had arrived in a defective condition. A jury verdict was returned in favor of the dealer on May 4, 1961.

It is the first contention of the appellant that the respondents are not in a position to claim an offset, assuming that the apples were delivered in a damaged condition, because the purchasers did not comply with the terms of Laws of 1939, chapter 197, § 33, which was in effect when the transactions involved in this case occurred. This section was repealed by Laws of 1955, chapter 14, with a saving clause as to rights existing under it at the time of the repeal.

The appellant also contends that the trial court erred in refusing to give an instruction setting forth the provisions of this statute.

Laws of 1939, chapter 197, is the "Washington Commission Merchants Act," which, according to its title, related to persons engaged in buying and selling agricultural products, provided for the licensing of such persons and the regulation of their activities by the director of agriculture. Section 33 provided:

"Any commission merchant and credit buyer or any cash buyer as defined in this act shall render to the consignor or vendor, on receiving any agricultural product, a statement in writing showing what agricultural products were received, the date received and the condition thereof. Before any claims for deductions may be made on the grounds that the agricultural products were received in a damaged condition or were not of the purported grade, quality, weight, or maturity, it shall be the duty of the commission merchant and credit buyer or cash buyer to call a duly authorized agent of the director for prompt inspection of such damaged products, and to procure from such agent of the director a certificate in triplicate as to the condition, grade, quality, weight, maturity, and disposition of said agricultural products, and to transmit one copy of said certificate to the consignor, and one copy to the director. A reasonable fee shall be paid to the director for such services, and in case of partial damage or total loss, this fee may be charged against such consignment or the

consignor or vendor. Said certificate may be used as evidence in any hearing conducted by the Department of Agriculture or in any civil or criminal action brought in any court in the State of Washington. Such claim must be made by the licensee within five (5) days of the date of receipt of such goods at the point where the condition on which claim is made became apparent."

A "commission merchant and credit buyer" is defined in § 6 of the act, *inter alia*, as one "who purchases or receives any agricultural product and who fails to pay in full for such product at the time of receiving it or at the time its value may be determined, . . . ." The respondents fall within this definition, but they did not at any time receive the apples, which were placed in a cold storage warehouse by the appellant and were segregated and shipped out by him to purchasers in other states when the respondents issued shipment orders. Consequently the respondents never became obliged to request an inspection, under the terms of § 33. Insofar as the buyers in other states are concerned, the act did not purport to apply to them, at least not expressly, and no inspectors from the department of agriculture were shown to be available in the places where the deliveries were made. If there were none, compliance with the requirements of the act would have been impossible. We can hardly assume that it was the intention of the legislature that agents should be hired throughout the United States, and since there was no showing that this was done, it would be unreasonable to conclude that the respondents are foreclosed from asserting their offsets simply because an inspection certificate was not obtained from an agent of the state of Washington. Certificates were obtained from public and private inspectors, and the reliability of these has not been seriously questioned.

We conclude that the court did not err in holding that the act was not applicable under the circumstances.

The appellant urges that the risk of loss was on the respondent under the provisions of the Uniform Sales Act, RCW chapter 63.04. RCW 63.04.230 provides:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, . . ."

The trial court instructed the jury that this is the law in this state and also gave an instruction embodying RCW 63.04.160 which provides, *inter alia*:

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

There was evidence upon which the jury could have found that the apples were damaged in the packing process, the damage being such that a visual inspection would not reveal it at the time of the official inspection, and there was also evidence from which the jury could conclude that inferior apples had been substituted after the inspections were made in some instances. If this evidence was believed by the jury, it could find that these apples were not of merchantable quality when they were delivered to the buyer.

On the other hand, there was evidence that the temperatures in the cold storage plant were not properly regulated. Upon this evidence, the jury might have found that this was the cause of a large part of the damage, and if it had found that there was no agreement to the contrary, it might have determined that the risk of this loss was upon the respondents. However, this was not its determination, and it cannot be said that the evidence was insufficient to support its verdict. That verdict could be grounded upon a finding that the apples were of unmerchantable quality when appropriated to the contract; that inferior apples were substituted before shipment; that the apples were damaged by improper refrigeration but that the appellant had, by agreement, undertaken to be responsible for the proper cold storage of the apples; or that more than one of these contentions of the respondents was established by the evidence.

The appellant argues that this was not a sale by description because an agent of respondents examined some of the apples as they were being packed. However, there was ample evidence that the respondents contracted to buy a specified quantity of "extra fancy delicious apples," a description with a commonly understood meaning, and that the apples had not been segregated and set aside at the time the purchase contracts were entered into. There is no dispute that the apples which were defective did not conform to this description.

The appellant cites the case of *McCormick v. Hoyt*, 53 Wn. (2d) 338, 333 P. (2d) 639. In that case, a purchaser of clocks and other goods stored in the seller's basement claimed that there had been a breach of implied warranty of merchantable quality, because many of the clock cases did not contain clock mechanisms. The appellant had been given an opportunity to inspect the clocks, but had failed to take advantage of it and had relied on his own assumptions. The evidence tended to show also that he had as much knowledge of clocks as had the seller. We held that there had been no reliance on the seller's skill and judgment and that this was not a sale by description because it was a sale of a specific lot of goods.

As we have pointed out earlier, the evidence in this case showed that the apples were bought by description and were not a segregated portion of the appellant's crop at the time the respondents contracted to purchase them. It was the duty of the appellant to select and box apples of the description specified in the contracts and to segregate them in carload lots. The facts in this case are materially different from those in the case of *McCormick v. Hoyt, supra.*

It is also suggested that the appellant should not be held liable for the unmerchantable quality of the apples because there was a custom "not to warrant" in the apple industry, testified to by two witnesses. Assuming that the evidence was sufficient to support a finding that such a custom existed and was known to both parties, the jury did not accept that evidence. We cannot say, as a matter of law, that the evidence demands such a finding.

Similarly, the appellant's contention that there was no breach of implied warranty at the time of the sale, because the goods were of merchantable quality at that time, assumes a finding on a question of fact which was not made by the jury, and there was ample evidence to support its finding that the apples had been damaged (even though the effects of the damage may not have been immediately apparent) before the apples were appropriated to the contract. There was also, as we have said, evidence which would support a finding that, after the apples had been appropriated to the contract, substitutions were made by the appellant. The appellant does not suggest that when title passes to the buyer, he takes with it the risk that the seller will tortiously interfere with the goods which he has appropriated to the contract, and such a contention would be insupportable.

The inspection certificates do not conclusively establish that the apples which were shipped were of merchantable quality. These inspections were made just after packing (before the deterioration due to faulty procedures had become apparent, if these were the cause of the damage) and some time before the apples were shipped. They had been segregated, but they had not been placed aboard cars, and the substitutions, if such there were, or deterioration from faulty cold storage, would not be reflected in these certificates. Consequently, the appellant's contention that these certificates exonerate him is without merit.

▪ There is, however, substantial merit in one contention of the appellant, and this requires the granting of a new trial. The trial court instructed the jury that a right may be waived impliedly by a party who neglects to insist upon it. The evidence was that the appellant did not make an immediate claim that the offsets which the respondents' customers demanded should not be deducted from the payments made to him by the respondents, and in fact indicated that he was not surprised that damaged apples had appeared, although he did not admit responsibility for the defects. The 6-year statute of limitations applied to his cause of action, and he did not file suit until nearly five of

these years had elapsed. While the respondents state that they were prejudiced by this inaction, they do not state wherein the prejudice lay. No doubt they were inconvenienced, but this type of inconvenience attends the delay of any suit within the statutory period of limitations. The legislature has decreed what shall be a reasonable time within which to bring a suit, and it cannot be said that the mere failure to bring suit constitutes a waiver of the right of action, so long as suit is brought within the statutory period.

■ The trial court's definition of an implied waiver, which was taken from a Washington case, *Kessinger v. Anderson,* 31 Wn. (2d) 157, 196 P. (2d) 289, correctly states the law as far as it goes, but significant words are omitted from it. When it is sought to prove that a right has been waived by failure to insist upon it, where no consideration is given for the waiver and the evidence does not show that the other party changed his position in reliance on the alleged waiver,[1] it must be shown that, when the time came at which the right *should have been* insisted upon, the owner of it manifested an intent to waive it by failing to assert it.

Mere silence does not constitute a waiver unless there is an obligation to speak. *Reynolds v. John Hancock Life Ins. Co.,* 117 Vt. 541, 97 A. (2d) 121; *Ohio Confection Co. v. Eimon Mercantile Co.,* 154 Minn. 420, 191 N. W. 910, 31 A. L. R. 952; *Dunbar v. Farnum,* 109 Vt. 313, 196 Atl. 237, 114 A. L. R. 996; 56 Am. Jur., Waiver § 17.

The court in *Dunbar v. Farnum, supra,* said of waiver:

"A waiver is the voluntary relinquishment of a known right. To establish it, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right in question. *Kahn v. Bancamerica-Blair Corp.,* 327 Pa. 209,

---

[1]See *Finley v. Finley,* 43 Wn. (2d) 755, 264 P. (2d) 246, 42 A. L. R. (2d) 1397, wherein it is said:

" 'Where a person with actual or constructive knowledge of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. . . .' "

193 Atl. 905, 907. It may be express or implied. But if it is of the latter class, caution must be exercised both in proof and application. The facts and circumstances relied upon must be unequivocal in character. *Rogers v. Whitney,* 91 Vt. 79, 82, 99 Atl. 419. Silence, alone, is never a waiver. It is only where there is an obligation to speak, that it has that result. *Titus v. Insurance Co.,* 81 N. Y. 410; *Crawford v. Winterbottom,* 88 N. J. Law, 588, 96 Atl. 497, 498; *List & Son Co. v. Chase,* 80 Ohio St. 42, 88 N. E. 120, 17 Ann. Cas. 61, 62; *Lord Construction Co. v. Edison Portland Cement Co.,* 234 N. Y. 411, 138 N. E. 39, 41. When it is in derogation of a statutory right, it is not favored, *Colgate v. U. S. Leather Co.,* 73 N. J. Eq. 72, 67 Atl. 657, 663, and will not be inferred from doubtful acts. *Foundry Mfg. Co. v. Farr,* 96 Vt. 382, 387, 119 Atl. 885."

In the case of *Charles A. Eaton Co. v. Louis Mark Shoes, Inc.,* 37 F. (2d) 715, 718, the court said that a mere withholding of the enforcement of the right to payment is not a waiver of anything.

Insofar as our research has disclosed, the courts invoke the doctrine of implied waiver by silence or acquiescence only where a forfeiture would otherwise result. There is no question of forfeiture before us here.

In this case, there was no showing that the appellant had knowledge of all of the facts at the time the deductions were made from payments on his account or that the circumstances existing at that time required him to protest; no showing that he expressly waived the right to payment of the balance, and no showing that the respondents were prejudiced by his failure to assert this right.

We are of the opinion that the trial court erred in giving an instruction which permitted the jury to find that a mere delay on the part of the appellant in bringing suit for the payments allegedly due him could constitute a waiver of his right to sue, when that delay did not extend beyond the period prescribed by the statute of limitations.

The judgment is reversed and the cause remanded for a new trial.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.

---

July 24, 1963. Petition for rehearing denied.