[No. 47-40406-2. Division Two. April 22, 1970.]

JOYCE LANDE, *Appellant,* v. SOUTH KITSAP SCHOOL DISTRICT No. 402, *Respondent.*

*Schumacher & Charette* and *John W. Schumacher,* for appellant.

*Myron H. Freyd, Prosecuting Attorney,* for respondent.

PEARSON, J.—This appeal arises out of a contract dispute between Joyce C. Lande (appellant) a school teacher, and her employer (respondent) South Kitsap School District No. 402. The dispute concerns her contract for the 1967-1968 school year.

Appellant commenced her employment with the respondent in 1962. Each year thereafter (until 1967) she was offered and accepted a contract to teach English and drama in high school. The salary detail for each of the first 4 years (including the 1966-1967 contract) contained a "special assignment" salary of $550 in addition to the basic salary, followed by the word, "Dramatics." For clarity, certain portions of the 1966-1967 contract are set forth below.[1]

---

[1]"It is hereby agreed by and between the board of directors of South Kitsap School District No. 402, of Kitsap County, State of Washington, hereinafter called the district, and Joyce Lande, hereinafter called the employee, that in accordance with action of the board of directors of said district as found in the minutes of the meeting held on the 4th day of April, 1966, said employee shall teach and/or perform other assigned professional services in the public schools of said district and perform such duties as are prescribed by the laws of the State of Washington and by rules and regulations made thereunder pertaining to said

On May 23, 1967, appellant received a proposed teaching contract for the 1967-1968 school year which provided for the basic salary for teaching English (which showed one step higher increment than for the prior school year). However, the "special assignments" salary was reduced to $100 and was followed by the word "Thespians."

This contract the appellant initially refused to sign, and instead instituted grievance procedures and engaged an attorney to represent her.[2] Her attorney arranged a conference between the appellant, respondent's superintendent, Dr. William E. Davis, and respondent's high school principal, Gordon H. Kingston. This conference occurred on August 25, 1967. The appellant's attorney, William Fraser, was present. At the conclusion of this meeting, the appellant reluctantly signed the contract which had been tendered to her on May 23, 1967. This contract was formally approved by the county superintendent on October 3, 1967.

Appellant commenced teaching on September 5, 1967 and on September 14, 1967 filed notice of appeal to the Superior Court for Kitsap County, seeking an adjudication that she was entitled to the same contract as existed during the

district, for one year, which shall include ........ days of service exclusive of holidays and vacations. The position of said employee shall be that of English, Drama-H.S. with it being understood that said employee shall be subject to assignment, reassignment or transfer by the board of directors of the district or its delegated administrative authority. Duties under this contract are to begin on the ............ day of ...................... 19......... Said employee is to receive an annual salary of ($6,320) Sixty-three hundred twenty. Said salary is to be paid in twelve installments with the first installment being paid on or before the first day of October 1966, the following installments on or before the first day of each succeeding calendar month; unless mutually agreed otherwise by the employee and the board of directors of the school district.

Salary Detail (Optional)

| | |
|---|---|
| Basic Salary $6,320 | BA. + 15 - 7th |
| Extended Term $............ | |
| Special Assignments $550 | Dramatics |
| Total Salary $6,870 | |

"

[2] A different attorney than the one representing her in this action.

preceding school year. She relied upon the "continuing contract law," RCW 28.67.070, which at that time provided:[3]

> Every teacher . . . holding a position as such with a school district . . . whose employment contract is not to be renewed by the district for the next ensuing term shall be notified in writing on or before April 15th preceding the commencement of such term of the decision of the board of directors not to renew his employment . . . If such notification . . . is not timely given by the district, the employee entitled thereto *shall be conclusively* presumed to have been reemployed by the district for the next ensuing term upon contractual terms identical with those which would have prevailed if his employment had actually been renewed by the board of directors for such ensuing term: . . .

(Italics ours.)

It appears without dispute that "dramatics," as it existed prior to the present controversy, was an extra-curricular activity in the high school, held after school hours and without academic credit. The program consisted of two separate activities. The first, for convenience, will be called dramatic production, and consisted of the direction and production of two all-school plays, one in the fall and the other in the spring of the year. The second part of the program involved advising an after-school club known as "Thespians" which is affiliated with a national organization of that name. In this context, it is obvious that the change in the 1967-1968 contract for Mrs. Lande was intended to remove her from directing and producing the two dramatic productions, but to retain her as advisor for the Thespian Club at a loss of "special assignment" salary of $450. The proposed new contract, however, made no changes in her basic assignment for curricular activities.

Concerning the conference of August 25, 1967, there is some dispute as to what was understood to be the scope of "Thespians" as that term was used in the offered contract. It seems clear, however, that both parties understood that its scope was subject to later negotiations and that it would

---

[3]The law was modified, effective April 25, 1969.

probably be expanded to include the direction and production of some "one-act" plays.

At the conclusion of the evidence (which included the testimony of Mrs. Lande, Dr. Davis, Mr. Kingston, and Mr. Fraser) and after the court had filed a memorandum opinion, findings of fact, conclusions of law, and judgment were entered, dismissing the appeal.

Specifically the court found, in addition to the above recited facts:

> After receiving the proposed contract, appellant sought advice on grievance procedures and directed a letter of protest to the respondent district and superintendent. Meetings between appellant and respondent's administrators were held in May and June, 1967, and a final meeting was held in August, 1967, with respondent's superintendent and principal, appellant and her attorney present. At the August meeting appellant signed a written contract form which contained language to the effect that appellant would be "Thespian Adviser" at an additional salary of $100.00 per year.

Finding of fact 3.

> At the August meeting, appellant was advised that she would not be permitted to teach in the respondent district if she refused to sign a contract. *Also at the August meeting, a discussion was had and general agreement reached in regard to employing appellant as "thespian advisor" under an expanded thespian program, the details of which were to be worked out at a later date. At this meeting appellant was tendered a new contract which provided for her additional employment as "thespian advisor" at an additional salary of $100.00 per year. Appellant had many doubts about the general situation and her position under the new contract, but did sign the new contract.*

Finding of fact 4, the italicized portion of which is assigned as error on appeal.

The court then entered these conclusions of law, the latter two of which are assigned as error on appeal.

> By reason of the failure of respondent to comply with the statutory notice requirement, as of April 15, 1967,

appellant was entitled to re-employment with the respondent school district as provided under RCW 28.67.070, and specifically was entitled to a contract containing terms identical to those in her preceding contract to the extent that such terms are protected by the cited statute.

Conclusion of law 3.

The contract tendered by respondent in May, 1967, constituted notice by respondent that it wanted to re-negotiate appellant's contract for the 1967-1968 school year.

Conclusion of law 4.

Appellant's actions following receipt of the proposed contract and her attendance at the August, 1967, meeting with her then attorney constituted negotiations on her part. By such negotiations, appellant elected not to stand on her statutory re-employment rights. Further by such negotiations and the signing of the new contract, appellant knowingly and wilfully waived her statutory re-employment rights.

Conclusion of law 5.

The trial court also dismissed the case, and refused to allow plaintiff attorney fees, which is assigned as error.

These issues are then presented on appeal:

(1) Did appellant's acts and conduct subsequent to the offer by respondent of a revised contract on May 23, 1967 present an issue of fact that she waived her rights under the continuing contract law?

(2) If so, did the notice of appeal filed by appellant prior to approval of the contract by the county superintendent constitute a "repudiation" of the waiver?

(3) Did the trial court abuse its discretion in refusing to allow attorney's fees to appellant?

■ The question of whether or not there has been a "waiver" is usually for the trier of facts. *Lawson v. Helmich,* 20 Wn.2d 167, 146 P.2d 537, 151 A.L.R. 930 (1944).

■ The Washington rule on "waiver" was clearly enunciated in *Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954).

The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A

waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. It is a voluntary act which implies a choice, by the party, to dispense with something of value or to forego some advantage. The right, advantage, or benefit must exist at the time of the alleged waiver. The one against whom waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right, advantage, or benefit; and his actions must be inconsistent with any other intention than to waive them.

We believe that the evidence before us is susceptible to two different interpretations and the following interpretation, chosen by the trial court, is supported by substantial evidence.

The new proposed contract, which is Plaintiff's Exhibit No. 2, was presented to the Appellant in late May, 1967. At that time she had the alternative of standing on her re-employment rights as stated in RCW 28.67.070, whatever they may be, or to rise to the bait of the school district and re-negotiate her 1967-68 contract. She sought advice from fellow teachers and teachers' associations regarding her position, as well as legal advice, and employed William Fraser, a Bremerton lawyer, to represent her. She was advised by Mr. Fraser of her re-employment rights under the cited statute. She was apparently more interested in the duties involved in her position than the money involved. She, therefore, chose not to stand on her statutory re-employment rights, but elected to enter into negotiations with the school district regarding her 1967-68 contract and her duties thereunder.

Statement of facts 89.

However, appellant challenges the conclusion that the mailing of the contract to her in May, 1967 with different provisions from those in her previous contract was notice from the school board that it wanted to re-negotiate her 1967-1968 contract. She also contends that the "stubborn confrontations" which occurred after the proposed contract was tendered to her on May 23, 1967 were not negotiations, inasmuch as the school board never thereafter gave up

anything and she in fact gained nothing between May 23 and August 25, 1967. She concedes, however, that she did meet with Dr. Davis and others during the summer of 1967 to discuss her reemployment.

The term "negotiate" was defined by the Supreme Court in *Grammer v. Skagit Valley Lumber Co.*, 162 Wash. 677, 683, 299 P. 376 (1931).

> Words & Phrases (3d series), vol. 5, p. 404, defines "negotiate":
> " 'Negotiate' is to transact business, to treat with another respecting a purchase and sale, to hold intercourse, to bargain or trade, to conduct communication or conferences. It is that which passes between parties or their agents in the course of or incident to the making of a contract; it is also conversation in arranging terms of contract."

We think the meetings and conversations which took place between the parties in the months prior to the contract signing did constitute "negotiations" within the above definition. It is true that the school board did not accede to appellant's wishes, but the goal of negotiation is to move one or more parties to agreement, settlement or compromise. The fact that it was appellant who made the compromise does not indicate a lack of negotiations. The appellant was given the option of signing a contract for the curricular work and pursuing further efforts to obtain the extracurricular work. Instead, she signed the contract covering both phases.

The trial court believed and found that appellant made a choice not to pursue further grievance procedures and we cannot say this finding was erroneous as a matter of law.

Appellant also urges that there was no "waiver" because (1) she did not voluntarily sign the contract and (2) she was not sufficiently aware of her rights to have voluntarily relinquished them.

These arguments ignore the testimony of both Dr. Davis and Mr. Fraser, who testified that she was given the option and chose to sign a contract covering both curricular and extracurricular work. Mr. Fraser testified: "Q She did

sign the contract willingly and by her own free choice? A Oh, yes." (Statement of facts 25.)

She may not have been enthusiastic about signing the agreement and may subsequently have thought that she made a bad decision, but there was substantial evidence to support the trial court's finding that a voluntary waiver was made.

Appellant also contends that she had not been fully advised by her attorney of her rights under the continuing contract law. This claim is based on Mr. Fraser's testimony that he thought Mrs. Lande was at least owed the money to the extent of the prior contract.

We think Mr. Fraser's interpretation of the continuing contract law was reasonable. Mrs. Lande, under her prior contract, was subject to "assignment or reassignment." The continuing contract law would not in any event have given her a vested right to coach dramatics, an extracurricular subject. It would, at best, entitle her to the extra compensation ($550) had she pursued regular grievance procedures. The trial court, under the evidence, was justified in finding that appellant was aware of her rights under the continuing contract law and made a knowing and voluntary waiver of those rights.

The second question is whether or not appellant repudiated the waiver by filing this action before the county superintendent had signed his approval on October 3, 1967.

RCW 28.67.070 provided in part:

> No teacher shall be employed except by written order of a majority of the directors of the district at a regular or special meeting thereof  .  .  .
>
> The board shall make with each teacher employed by it a written contract, which shall be in conformity with the laws of this state. Every such contract shall be made in duplicate, one copy of which shall be retained by the school district clerk or secretary, and the other shall be delivered to the teacher, after having been approved and registered by the county superintendent.

The argument is made that these statutory requirements were not complied with because neither the superintendent

or Mr. Kingston had statutory authority to enter into a contract with Mrs. Lande, nor was any authority by the board shown by the evidence to have been given to either of them to enter into the contract with Mrs. Lande. Consequently, it was necessary that the school board meet after the August 25 meeting and formally approve the "offer" which Mrs. Lande had made by signing the agreement.

The legislature has left the question of employment of teachers solely within the discretion of a majority of the school board. *See State ex rel. Mary M. Knight School Dist. 311 v. Wanamaker,* 46 Wn.2d 341, 281 P.2d 846 (1955). It is elementary contract law that unless both parties are bound by mutual promises or considerations, neither is bound. *Larkins v. St. Paul & Tacoma Lumber Co.,* 35 Wn.2d 711, 214 P.2d 700 (1950). The contract tendered to Mrs. Lande in August was the same one which had been tendered to her in May. It contained these provisions:

> If this contract is not signed by said employee and returned to the clerk or secretary of the school district on or before May 31, 1967, the board reserves the right to withdraw *this offer.* The employee further affirms that he or she is not bound by any other contract which might interfere with the performance of duties.
>
> This contract does not become effective until said employee registers a valid teaching certificate, a valid health certificate and any other required credential with the county superintendent of schools.
>
> *By signing this contract, the employee named herein and the board of directors of the school district named herein agree to its terms.*
>
> IN WITNESS WHEREOF, we have hereunto subscribed our names this ............... day of .........................., 19...........

By order of the
Board of Directors
School District No.
402, Kitsap County
(Board of Directors)
Attest: Tyman L. Stephens (s)
      Clerk or Secretary
          I. Teacher's certification
          record number .    ...................... ....

II. Washington State Teachers' Retirement System
   a. Membership number  ...........................
   b. If not a member, give exemption number, retired number or state "new" or "withdrawn"  ...........................

III. Social Security Number  ...........................
     Prov. Secondary '68
     6-30-68

School District No............, ...........................County
           Joyce C. Lande (s) Employee
           P. O. Address...........................

Approved and registered on October 3, 1967
           D. Cramblitt (s)
           County Superintendent

I, the undersigned, do certify that the foregoing statements are true and correct to the best of my knowledge.
           Joyce C. Lande (s)
           Signature

(Italics ours.)

The blanks for signature of the board of directors were filled in by the stamp "By order of the Board of Directors of School District No. 402 Kitsap County" which stamp was attested by Tyman L. Stephens who signed as clerk of the Board of Directors. So far as we can tell from the record, this stamp and signature were affixed before Mrs. Lande signed the contract and we so construe the record. The signature of the county superintendent did not appear at the time Mrs. Lande signed the agreement.

We believe the written contract constituted an offer of employment by the school board which was accepted and became binding on both parties when appellant signed it. (The agreement so provides.) The required approval by the county superintendent, who is not a member of the school board, would not affect its validity, but is required

solely to determine that the contents of the contract conform to the laws of the state and to determine that the teacher has valid credentials to teach. There was no testimony that Mrs. Lande's teaching credentials were not filed with the county superintendent on August 25, 1967.

■ We think the contract meets the requirements of RCW 28.67.070 and that the stamp of the school board signed by the clerk constitutes the signature of the school board. *See Degginger v. Martin,* 48 Wash. 1, 92 P. 674 (1907) for an analogous situation.

The appellant cites *Cope v. School Dist. 122,* 149 Wash. 76, 270 P. 120 (1928) as authority for the proposition that no contract exists between the parties until the county superintendent approves the contract. We find that case to be distinguishable. There was a sharp dispute as to whether or not the clerk of the school district had signed the contract for the board and none of the directors had signed it. It never was presented to the county superintendent for approval. Also the contract was for a longer period than 1 year and consequently was "contrary to law."

We are of the opinion that the trial court was correct in finding, under the circumstances of this case, that the contract existed between appellant and the school district prior to her purported revocation on September 14, 1967, even though it was not registered with the county superintendent until October 3, 1967.

Finally, appellant contends that the trial court erred in denying her attorney's fees because she "failed in her appeal."

■ RCW 28.58.490 provides that the trial court may "in its discretion" award such fees and costs to a teacher. Appellant argues that denying attorney's fees because her appeal failed is a non-exercise of discretion. We do not agree. Denial of attorney's fees is as much an act of discretion as would be the allowance of such fees. We see no

manifest abuse of discretion in disallowing the fees under the circumstances of this case.

Judgment is affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.