[No. 349-2.   Division Two.   January 14, 1972.]

GORGE LUMBER COMPANY, INC., *Respondent*, v. BRAZIER LUMBER COMPANY, INC., *Appellant*.

*E. M. Murray* and *William E. Holt* (of *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*), for appellant.

*John L. La Londe* and *J. M. Witteman* (of *Boettcher, La Londe, Kleweno, Lodge & Ladley*), for respondent.

PEARSON, J.—Defendant, a Washington lumber wholesaler, appeals the dismissal of its breach of contract counterclaim of $17,280 against plaintiff, an Oregon lumber producer. Plaintiff, Gorge Lumber Company, brought suit to collect payment due on a carload of lumber it had shipped to one of defendant's customers. Defendant, Brazier Lumber Company, counterclaimed that plaintiff had repudiated previous orders on file from defendant, but the trial court held that defendant had waived its cause of action and awarded payment to plaintiff.

The orders in issue were placed between October, 1967 and January, 1968, and amounted to 16 carloads of two-by-four studs. As was the custom of the lumber industry, these orders were placed initially by a telephone call from de-

fendant's president, John Brazier, to plaintiff's president, John Johnson, and were later confirmed by signed acknowledgment form. The contracts between the parties were subsequently modified for shipment on an "accumulation basis" (*i.e.*, plaintiff would ship only when it produced, in the ordinary course of business, the type of lumber ordered). On March 8, 1968, plaintiff returned the orders to defendant with a letter stating the reasons for cancelling them and that plaintiff wished to do no further business with defendant.[1] The trial court found that this action by plaintiff constituted a wrongful anticipatory repudiation of the contracts. Neither party challenges this finding.

Although there is some dispute in the evidence as to what happened next, apparently the parties had some additional phone conversations and a letter was sent by defendant to plaintiff on May 17, 1968, requesting whatever shipment possible to defendant's customers in Houston, Texas. Nevertheless, Brazier admitted during the trial that shortly after May 17, 1968 he was convinced plaintiff would not fill any of the orders.

On June 20 1968, Brazier again called Johnson to request

---

[1]                                "3/8/68

"Brazier Lumber Co.
"P.O. Box 3377
"Tacoma, Washington (98499)
    "Re:   Unconfirmed orders
"Gentlemen,
"Herewith inclosed are your orders, of which, we are returning again for the following reasons:
1st: You are not adhering to your phone conversations
2nd: You do not pay according to our invoice terms and are always late, in fact, you have a past due invoice right now (our #1673—Car #UP 114221).
3rd: We did not confirm or acknowledge these orders.
4th: We are completely out of 1½" KD-W/F stock and have no idea when we will be getting more stock in.
5th: On a recent stockholders meeting and reviewing your account and past business experiences, we have come to the conclusion that we do not wish to do business with your company.
"Yours truly,
"E.J. Johnson (signed)
"Gorge Lumber Co."

shipment to defendant's Houston customers. Johnson testified that due to the mistrust that had accumulated and because he was afraid of not receiving payment, he had told Brazier that he did not care to deal with him further. At that point, Johnson testified that Brazier suggested they start anew, with a clean slate, that they would just forget the whole thing, start over again, and try doing it right.[2] Defendant objected to this testimony. The court admitted it to the extent it related to the dealings of the parties, but expressly reserved ruling upon whether it was admissible on the issue of whether or not defendant's action for breach of contract was relinquished. Defendant did not cross-examine Johnson with regard to the phone conversation and Brazier was not asked, when he later took the stand, whether he had made such statements.

Johnson testified that after Brazier suggested forgetting

---

[2]"Q And what was the substance of that conversation? A The substance was that he needed to ship a car of—either one or two cars to his customer in Houston, Texas, he had to have shipment, and I told him the circumstances that were involved, the mistrust that had accumulated to such an extent that I didn't dare ship to the Brazier Lumber Company because of the fact we were afraid of not being paid and I told him of all of the trouble that had occurred in the past and that I just couldn't ship to him and so he said, well, he said, lets just forget the whole thing and lets start this whole thing over again, lets try doing it right, and I was still skeptical so what I did . . .
". . .
"Q What was said in that telephone conversation that you were referring to by Mr. Brazier to you? A Well, he said that we would—he needed this lumber and that he wanted to—we would start anew and start business on a clean slate and so of course by this time the mistrust of telephone calls that weren't adhering correctly, and what have you, and worried about these late payments I didn't want to do any more business with Mr. Brazier but, in the meantime, Mr. Brazier said he had to have these cars of lumber and so I said, well, I said, if you've got to have another car and you want to start out with a clean slate I'll tell you what we'll do, I said, we will go ahead and you promise to pay me—what I was concerned about was losing money where he would not pay me—so I said, you send me a letter which I thought was sufficient to be confirmation of where he would pay me at 90 percent on receipt of the papers and less two percent balance in ten days and Mr. Brazier said, fine, I'll have that in the mail to you right away."

the past dealings, he agreed to ship two carloads, subject to 2 per cent cash discount—90 per cent on receipt of invoice. Brazier confirmed the phone conversation the next day, with a letter and a signed order, neither of which mentioned the past dealings between the parties.

Plaintiff subsequently shipped one of the carloads for which it never received payment. It then brought this action for $3,001.97, and defendant asserted the counterclaim presently in issue for repudiation of prior orders. In its oral opinion, dismissing the counterclaim, and later in the findings and conclusions, the trial court for the first time indicated that the telephone conversation was admissible to show a waiver of defendant's cause of action for breach of contract.

Two issues are before us on appeal: (1) Was the telephone conversation admissible to show defendant's relinquishment of its cause of action? (2) Was the telephone conversation ever properly admitted for that purpose?

The trial court's crucial finding of fact, which is challenged by appellant, stated:

> On the 21st [sic] day of June, 1968, John M. Brazier called E. J. Johnson, requesting shipment of two additional carloads of lumber. Mr. Johnson was initially unwilling to accept the order because he did not think he would receive prompt payment. Mr. Johnson then agreed to ship the lumber provided that Brazier Lumber Co., Inc. would furnish a written undertaking as to payment terms satisfactory to him. Brazier Lumber Co., Inc. did send a letter dated June 21, 1968, which letter was received by Gorge Lumber Co. and was satisfactory to Mr. Johnson as conforming to the telephone agreement between the parties. E. J. Johnson testified to certain statements made by John M. Brazier in the telephone conversation of June 21 [sic], by which statements, together with the letter sent and the transaction entered into pursuant to that telephone conversation *the court finds that John M. Brazier waived the then existing claim of* Brazier Lumber Co., Inc. *against* Gorge Lumber Co. *for breach of contract by anticipatory repudiation.*

(Italics ours.) Finding of fact 11.

There is no question that the business dealings of the parties had broken down completely prior to the disputed telephone conversation. (*See* footnote 1.) There is also little doubt that a reasonable inference existed by reason of what occurred on June 20 and thereafter—an inference that defendant sought to reestablish a business relationship with plaintiff, so that he could obtain for his customers a source of manufactured lumber products. In this setting, it is our view that the telephone conversation was relevant and material to show how any future dealings between the parties would be changed because of their past difficulties. The real problem, however, is to determine whether the substance of the telephone conversation furnished a legally sufficient basis for extinguishing legal rights which had already accrued to the defendant. The trial court believed that it did, and in the oral opinion the court relied upon a provision of the Uniform Commercial Code, namely, RCW 62A.2-209, which provides:

(1) An agreement modifying a contract within this Article needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this Article (RCW 62A.2-201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

It is our opinion that this provision was inapplicable.

■ Subsection (4) of the above quoted provision permits the finding of a "waiver" of existing contract rights,

even though a party to a contract has not effected a modification or a rescission thereof under subsections (2) or (3). The statements by Brazier on the telephone do not permit even a reasonable inference that a contract modification was intended, as subsection (2) contemplates. An anticipatory breach of the series of prior contract orders had already occurred. Under such circumstances, RCW 62A.2-610[3] becomes applicable, to show what alternatives are available to the party aggrieved by an anticipatory breach.

The waiver provision of RCW 62A.2-209 appears inapplicable for yet another reason. Subsection (3) states that the contract "as modified" must not violate the statute of frauds. Even if the telephone order of June 20 could be considered a modification of the previously repudiated orders, it does not appear that the statute of frauds was violated, as the phone conversation was acknowledged by a written order and letter the next day. (*See* RCW 62A.2-201.) We conclude that the stated reason of the trial court does not establish a legal basis for dismissal of defendant's cross claim, since RCW 62A.2-209 is by its terms inapplicable where, as here, there has been an anticipatory breach of prior agreements.

Likewise, we do not think RCW 62A.1-107 furnishes a basis for discharging plaintiff's breach of contract, since that section provides that the breach "can be discharged . . . without consideration by a written waiver or renunciation signed and delivered by the aggrieved party."

---

[3]RCW 62A.2-610 provides: "When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

"(a) for a commercially reasonable time await performance by the repudiating party; or

"(b) resort to any remedy for breach (RCW 62A.2-703 or RCW 62A.2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and

"(c) in either case suspend his own performance or proceed in accordance with the provisions of this Article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (RCW 62A.2-704)."

Here there was no written waiver and, consequently, no basis for discharge of the breached contracts.

■  It is our view, however, that neither this provision of the commercial code (RCW 62A.1-107) nor the provision giving alternatives to an aggrieved party for repudiation (RCW 62A.2-610) precludes the applicability of common-law principles where the code provisions are not applicable or where the common-law principles have not been displaced by the code. RCW 62A.1-103 provides:

> Unless displaced by the particular provisions of this Title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

We view this provision as a general adoption of common-law principles to commercial transactions, where the code provisions do not apply to replace them.

Was the trial court justified in holding that the telephone conversation effected a discharge of plaintiff's breach of contract under any common-law theories, aside from the commercial code provisions with which we have dealt? As a matter of law, we must eliminate "accord and satisfaction"[4] and common-law "waiver."

■  The essential elements of accord and satisfaction are lacking. There cannot be an accord and satisfaction unless there is a claim or demand made by one party upon the other and an agreement to settle it, that is, a meeting of the minds. *Puget Sound Pulp & Timber Co. v. O'Reilly,* 239 F.2d 607 (9th Cir. 1956); *Kibler v. Frank L. Garrett & Sons, Inc.,* 73 Wn.2d 523, 439 P.2d 416 (1968). The evidence does not permit a reasonable inference that Brazier was asserting a claim for breach of contract, arising out of the repudiated orders, nor that the parties agreed to extinguish such claim in consideration of the new order. The trial

---

[4]There is some indication that RCW 62A.1-107 was intended to embrace the concept of "accord and satisfaction." *See* Washington Comments to RCW 62A.1-107.

court pointed out in its oral decision that at the time of the June 20 telephone conversation, it was not clear to the parties that defendant had a claim, and there was a dispute as to whether any shipments were owing at all and whether the memoranda had confirmed the earlier telephone agreements concerning the repudiated order. In short, as the court stated, there were a series of disputed transactions and not a clear cause of action for breach. Consequently, accord and satisfaction was not established by reasonable inference from the evidence.

Neither does it appear that the counterclaim was relinquished on a common-law waiver theory. It has been said there are few principles in law with vaguer boundaries than those applied under the name of waiver. 1 W. Jaeger, Williston on Contracts § 203, 755 (3d ed. 1957). " 'It is a flexible word, with no definite, and rigid meaning in the law, and, since it may be used in many senses, it is often of equivocal significance." (Footnotes omitted.) *United States v. Chichester*, 312 F.2d 275, 281 (9th Cir. 1963), citing 92 C.J.S. *Waiver* 1041 (1955). The requirements for a waiver differ greatly in various states.[5]

■ The law is unclear in Washington, but there is some indication that a waiver may be based on estoppel (actually a different concept altogether) or on consideration. *See Voelker v. Joseph*, 62 Wn.2d 429, 383 P.2d 301 (1963). As a waiver in Washington is unilateral (*Bowman v. Webster*, 44 Wn.2d 667, 269 P.2d 960 (1954), *Kessinger v. Anderson*, 31 Wn.2d 157, 196 P.2d 289 (1948)), there can be a waiver without consideration as well. (*See* footnote 5.) There is also no indication that a waiver cannot be oral

---

[5]In many jurisdictions, waiver needs consideration or must be based on estoppel, *McNamara v. Miller*, 269 F.2d 511 (D.C. Cir. 1959), *Garmeada Coal Co. v. International Union of United Mine Workers*, 122 F. Supp. 512 (E.D. Ky. 1954). Others state that consideration is necessary only if a substantial right is involved. *Pacific States Corp. v. Hall*, 166 F.2d 668 (9th Cir. 1948). Still others have held that a waiver is a unilateral act, and therefore no consideration or estoppel is necessary. *United States Fidelity & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353 (Tex. 1971).

unless violative of the statute of frauds.[6] Nevertheless, a waiver does not exist in this case, for basically the same reason there is no accord and satisfaction. A waiver is the intentional and voluntary relinquishment of a known right. *Lande v. South Kitsap School Dist. 402*, 2 Wn. App. 468, 469 P.2d 982 (1970); *Bowman v. Webster, supra.* It is not clear, given the series of disputed transactions that occurred, that Brazier was aware of what his rights were with regard to the previous orders, and consequently he could not waive them.

Finally, plaintiff urges that estoppel is an available legal theory for effecting a discharge of defendant's action for breach of contract, even though the requirements of waiver may not be present.

■ "Waiver" and "estoppel" are oftentimes used interchangeably, and are related doctrines, although there is a significant distinction between them. Waiver requires an element of knowledge and intent, while estoppel arises by operation of law and need not be intentional nor voluntary. *Buchanan v. Switzerland Gen. Ins. Co.*, 76 Wn.2d 100, 455 P.2d 344 (1969); *Kessinger v. Anderson, supra.*

■ The doctrine of promissory estoppel is a well-recognized doctrine, and is, in our opinion, effective to work a discharge where its elements are present. Those elements include: (1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such manner that (5) injustice can be avoided only by enforcement of the promise. *Hellbaum v. Burwell & Morford*, 1 Wn. App. 694, 463 P.2d 225 (1969); *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 424 P.2d 290 (1967).

We think the phone conversation was admissible and

---

[6]The official comment to RCW 62A.1-107 seems to indicate that an oral waiver requires consideration. Note, however, the comments are not adopted as law, and the Washington Comment to that same section seems to indicate the official comment is referring to an accord and satisfaction situation (which clearly requires consideration) rather than a pure waiver.

relevant to establish this type of defense to defendant's counterclaim. Were we the trier of facts, we could find each element of this defense present, if the inferences from the conversation are interpreted favorably to plaintiff. Accepting Johnson's version of the phone conversation, he was induced by Brazier's promise to enter into a future contract for lumber, to which he had emphatically closed the door by his letter of March 8, 1968. The promise to "start anew and start business on a clean slate," when read in light of the abrupt termination of the previous business relationship, was clearly intended to induce future shipments. In reliance on the promise, plaintiff did ship an order and then was forced into litigation to recover the price. The element of injustice referred to in the fifth requirement of promissory estoppel appears present.

However, we are not the trier of fact. The finding of the trial court that defendant "waived" his then existing claim for breach of contract by virtue of the telephone conversation is not a sufficient factual basis for application of the doctrine of promissory estoppel. It is for this reason that we decline to follow the frequent practice of sustaining the trial court's decision for reasons other than those relied upon by that court, where there is a legal basis to do so.

Nevertheless, because the trial court generally found that defendant's cause of action for breach was relinquished by the defendant's actions, it is our view that the case should be remanded for a factual determination of whether or not the elements of promissory estoppel are present, and if so, the judgment should be affirmed. If, on the other hand, the court should find any elements of that defense have not been established, the court, having already determined that plaintiff breached his agreement by anticipatory repudiation, should ascertain and allow damages for the breach to be offset against the damages established on plaintiff's cause of action.

In connection with making this determination, the trial court should allow defendant the opportunity to again cross-examine Mr. Johnson concerning the telephone con-

338

versation, and should also allow Brazier to give his version of that conversation. This should be allowed because defendant may have been misled by the trial court's action in reserving its ruling concerning admission of the telephone conversation and then not announcing its ruling on the point until the time the oral decision was rendered.

Plaintiff's action need not be retried.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

PETRIE, C.J., and ARMSTRONG, J., concur.